Marilyn MEDBERRY, et al.,
Plaintiffs-Appellants,

v.

Leo HEGSTROM, Director of Human
Resources, et al.,
Defendants-Appellees.

No. 84–3866.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 6, 1985.

Withdrawn from Submission Oct. 2, 1985.

Resubmitted April 14, 1986.

Decided April 14, 1986.

Angela Sherbo, Portland, Or., for plaintiffs-appellants.

Michael Reynolds, Asst. Atty. Gen., Salem, Or., for defendants-appellees.

Before KILKENNY and FLETCHER, Circuit Judges, and WEIGEL,* District Judge.

FLETCHER, Circuit Judge:

Appellants, recipients of Aid to Families with Dependent Children (AFDC), appeal from the district court's grant of summary judgment upholding the State of Oregon's method of determining the period of ineligibility for payments following receipt of nonrecurring lump sum income. Because the method used is inconsistent with the applicable federal regulation, we reverse.

BACKGROUND

The State of Oregon, through its Adult and Family Services Division (AFS), participates in the jointly funded federal-state AFDC program established by the Social Security Act, 42 U.S.C. § 601 et seq. (1983). The program provides financial assistance

---

* Stanley A. Weigel, United States District Judge for the Northern District of California, sitting by designation.

to children and their caretaker-relatives. Generally speaking, the amount of money for which a family is eligible is determined by subtracting the family's income, if any, from a state-determined standard of need for a family of its size.

In 1981, Congress amended the Social Security Act to provide that nonrecurring lump sum payments to AFDC recipients would be considered income available to the families in the month following receipt and in a specific number of subsequent months (calculated by dividing the lump sum by the appropriate standard of need). 42 U.S.C. § 602(a)(17) (Supp.1985). Thus, if a family with a $300 need standard received $1500 in July (from a bequest or a personal injury claim settlement, for example), it would receive no AFDC payments from August through December, the subsequent five months.

The federal regulation implementing this treatment of lump sum income states,

> [w]hen the AFDC assistance unit's income ... exceeds the State need standard for the family because of nonrecurring earned or unearned lump sum income, the family will be ineligible for aid for the full number of months derived by dividing the sum of the lump sum income by the monthly standard for a family of that size.... The period of ineligibility shall begin with the month of receipt of the nonrecurring income or, at State option, as late as the corresponding payment month.[1]

45 C.F.R. § 233.20(a)(3)(ii)(F) (1985) (hereinafter "federal regulation"). The issue in this case is how the federal regulation applies to two situations: first, when the state does not discover that a family has received lump sum income until sometime after its receipt and, second, when AFDC payments are continued pending a hearing on the treatment of a lump sum and the hearing is decided adversely to the AFDC recipient. AFS calculates periods of ineligibility in these situations beginning with

the month after the lump sum is discovered or the hearing decision is issued. Appellants contend that the federal regulation requires that the periods of ineligibility begin no later than the month after the family received the lump sum. They maintain that any AFDC payments received in months that the family is ineligible for AFDC should be treated as overpayments and recouped as such through deductions not in excess of 10% of the monthly AFDC payment. *See* 42 U.S.C. § 602(a)(22)(A) (Supp.1985).

The stories of two of the appellants demonstrate the difference between the two methods. Donna Roberts received a $500 settlement from an insurance company for injuries received in an automobile accident. Unaware that she was required to report the money, she spent it on outstanding medical bills, a utility bill, and a car seat and clothing for her two-year old boy. Two months later, AFS discovered the fact that she had received the income. Under the AFS's method of determining the period of ineligibility, Roberts would have received no AFDC payment in the third month and a partial AFDC payment in the fourth month after receipt of the settlement money. Under appellants' theory, Roberts was ineligible for any payment in the first month and eligible for a partial payment in the second month after she received the money. The AFDC payments she erroneously received during those months would be treated as overpayments and recouped gradually over several months.

Shannon Gamboa received a $622.32 lump sum, which she reported to the state. The state informed her that she would receive no aid for the next two months and partial aid for the third month (her monthly AFDC payment was $303). She requested a hearing and her payments were continued pending its outcome. Seven months after she received the money, the hearing officer determined that it would be treated

---

1. For budgetary reasons, some states pay benefits based on income received in a previous month. The corresponding payment month can

be one or sometimes two months after the month in which income is received.

as income. Under AFS practice, she would have become ineligible at that time and received no AFDC for the following two months,[2] the eighth and ninth after she had received the lump sum. The money was already spent at that time. Under appellants' view of the law, Gamboa was ineligible in the months immediately following receipt of the lump sum. The AFDC payments she received during those months were overpayments that should be repaid in installments over the 21 months following the hearing decision.

Appellants brought suit to enjoin AFS from applying its policy.[3] The district court, ruling on cross-motions for summary judgment based on stipulated facts, upheld the state policy. Appellants filed this timely appeal. After oral argument we requested and received an amicus curiae brief from the Secretary of Health and Human Services giving her interpretation of the federal regulation.

## DISCUSSION

The district court, in holding for AFS, found the federal regulation ambiguous because it mandates both ineligibility for the "full number of months" as computed by the rule and an ineligibility period beginning no later than the corresponding payment month for the month the lump sum is received. The court thought it impossible to satisfy both requirements in appellants' cases. It also found the AFS position "more consistent with the purpose of the lump-sum statute and regulations" than that of appellants. We review a grant of summary judgment *de novo*. *Moorhead v. United States*, 774 F.2d 936, 939–40 (9th Cir.1985).

■ The Secretary, in her *amicus curiae* brief, supports appellants' position. She interprets the federal regulation

to require that, when an AFDC family receives lump sum income, the period of ineligibility must begin no later than the corresponding payment month *irrespective of the month of discovery of the receipt of lump sum income or of any procedural delays in terminating benefits, such as a request for a fair hearing. If the family receives benefits during any month of the ineligibility period, they are considered to be overpayments* that must be recovered in accordance with section 402(a)(22) of the Act, 42 U.S.C. § 602(a)(22), as implemented.

Brief of the Secretary of the United States Department of Health and Human Services as Amicus Curiae at 6 (emphasis added). We give great deference to an agency's construction of its own regulations. *Horizon Mutual Savings Bank v. Federal Savings and Loan Ins. Corp.*, 674 F.2d 1312, 1316 (9th Cir.1982). Where a possible ambiguity exists, the agency's interpretation is controlling unless it is plainly erroneous or inconsistent with the regulation. *Ventura-Escamilla v. INS*, 647 F.2d 28, 32 (9th Cir.1981); *see Salehpour v. INS*, 761 F.2d 1442, 1445 (9th Cir.1985).

■ The agency's interpretation of the regulation is common-sense and straightforward. Ineligibility for the "full number of months" means that the family does not meet the criteria for receiving AFDC for the stated number of months. It does not mean, as AFS seems to argue, that there must be a period equal to the "full number of months" during which the family would get no benefits at all. Oregon's own definition of "overpayment" seems to be in accord, recognizing in some circumstances that the state expects to make payments to families that are "ineligible." *See* Or.Admin.R. 461–07–250 (1985).

AFS argues that this interpretation of the regulation is inconsistent with the pur-

---

**2.** Gamboa would also have been ineligible for related medical assistance during those two months.

**3.** The suit originally was brought as a class action, but class certification was denied pursuant to a stipulation that all putative class members would receive the benefits of any injunction that was granted. Appellants also questioned two other AFS policies relating to lump sum payments. These issues are not before us.

poses of the underlying statute and should be rejected. *See Committee for an Independent P–I v. Hearst Corp.*, 704 F.2d 467, 473 (9th Cir.1983).

The legislative history of the statute suggests two reasons for the lump-sum payments amendment. Congress sought to avoid the "perverse effect" of the previous treatment, which "encourag[ed] the family to spend such income as quickly as possible in order to retain AFDC eligibility." S.Rep. No. 139, 97th Cong., 1st Sess. 505 (1981) *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 771. Congress apparently wanted to encourage AFDC families to use lump sums frugally so that they would be "available to meet [their] ongoing needs...." *Id.* The Senate Report also estimates that the measure would result in a $15 million savings over 3 years, *id.;* saving money for the government may have been another purpose of the enactment.

The federal regulation as interpreted by the Secretary is perfectly consistent with these purposes. It does not give AFDC families who know they will have to pay back gradually any overpayment an incentive to spend their entire lump sum at once; they cannot avoid a reduction in benefits by fast spending. It seems unlikely, however, that Congress expected AFDC families who received lump sum income to keep it untouched for several months in anticipation of a future cut-off of benefits. AFDC recipients, by definition, are having difficulty making ends meet.

Nor is the second possible purpose of saving money for the government frustrated by the Secretary's interpretation. The overpayments to ineligible recipients are recouped like any other overpayments, although recoupment may be slower and somewhat less sure than a total cut-off of benefits.[4]

▮ A state that chooses to participate in the AFDC program must conform to the requirements of the Social Security Act and Federal AFDC regulations. *McCoog v. Hegstrom*, 690 F.2d 1280, 1284 (9th Cir. 1982). Where, as here, a state policy is prohibited by a reasonable federal regulation that does not undermine the underlying statutory purpose, we must invalidate it.

REVERSED and REMANDED.

---

4. AFS also argues that the Secretary's interpretation will encourage AFDC families to ask for hearings or not to report lump sum income to avoid losing benefits. We do not think that the incentive to do either will be significantly increased by adopting the Secretary's interpretation.