[No. A039086. First Dist., Div. Four. Oct. 28, 1988.]

COUNTY OF CONTRA COSTA, Plaintiff and Appellant, v.
NEAL LEMON, Defendant and Respondent.

In re the Marriage of MELODY and NEAL LEMON.
NEAL LEMON, Respondent, v.
MELODY LEMON, Defendant and Appellant;
COUNTY OF CONTRA COSTA, Appellant.

684

COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan, Josanna Berkow and Linda James, Deputy Attorneys General, for Plaintiff and Appellant.

Frederic L. Webster, Diane P. Webster and Webster & Webster for Defendant and Appellant.

## OPINION

**CHANNELL, J.**—When respondent Neal Lemon won $100,000 in the California State Lottery, appellant County of Contra Costa sought reimbursement for payments it had made on behalf of his minor child and asked that he be ordered to pay child support in the future. The trial court ruled that Lemon's lottery winnings were property, not income for purposes of calculating his child support obligation. The county appeals, contending that the entire lottery proceeds are income for purposes of determining child support obligations. We agree and reverse the judgment.

## I. FACTS

In 1970, respondent Neal Lemon married Melody Leonard. Their daughter Denise was born in December 1970. The couple separated in October 1983, but Neal has paid no child support. Since 1983, Neal earned an annual estimated income of $7,000 from doing odd jobs. Melody is not employed. In November 1983, appellant County of Contra Costa began paying Aid To Families with Dependent Children (AFDC) to Melody on Denise's behalf.

In March 1986, Neal won $100,000 in the California State Lottery. After paying taxes, he received the net proceeds of $75,000 in April.[1] Then, the county sought a court order compelling him to pay child support and to reimburse the county for its previous AFDC payments. The parties stipulated that $15,000 of the lottery proceeds would be deposited in his attorney's trust account as a bond.

In May 1986, Neal filed for dissolution of marriage, asking that the lottery proceeds be confirmed as his separate property. In response, Melody asked for child and spousal support and requested that the trial court prohibit Neal from access to the $15,000 fund. By this time, Neal had spent the remainder of his lottery winnings.

The county intervened in the dissolution action, asking for AFDC reimbursement from Neal. When the marriage was formally dissolved in September 1986, the trial court granted primary physical custody of Denise to Melody, and ordered Neal to pay $175 per month child support beginning the following month, payable from the $15,000 trust account. The court's notice of intended decision also ordered that the county receive part of this fund for reimbursement for AFDC payments. When computing the amount

---

[1] The taxes paid must have been federal taxes. State taxes are not imposed on California State Lottery prizes. (Gov. Code, § 8880.68.)

of child support Neal must pay each month, the court calculated Neal and Melody's combined income excluding the lottery proceeds. The court found that the lottery proceeds were property, not income for purposes of calculating child support. However, the court did add $250 per month to Neal's income, based on its determination that if he had invested his winnings he would have earned this amount of interest, which would have constituted income for purposes of calculating Neal's child support obligation.

The county's motion for reconsideration of this intended decision was denied. The trial court ordered the $15,000 fund be divided, as follows: $5,050 for AFDC reimbursement for the period of December 1983 to September 1986; $4,725 for child support from October 1986 through December 1988 when Denise reaches age 18; and $1,600 in attorney fees. The remainder of the fund was to be returned to Neal. Judgment was entered accordingly.

## II.  DISCUSSION

■ The county contends that the trial court erred when it found the net lottery proceeds to be property rather than income for purposes of calculating Neal's child support obligations.[2] We begin our analysis of this question by reviewing a thicket of state and federal authorities that regulate this area of law.

■ Under the AFDC program, participating states providing financial assistance to families with needy dependent children are partially reimbursed by the federal government. Although the states are largely free to determine the appropriate standard of need and the level of assistance, they must administer the state programs in accord with pertinent federal statutes and regulations. (*Lukhard* v. *Reed* (1987) 481 U.S. 368, 371 [95 L.Ed.2d 328, 333, 107 S.Ct. 1807] [plur. opn.]; see 42 U.S.C. §§ 601, 602; *Burnham* v. *Woods* (1977) 70 Cal.App.3d 667, 673 [139 Cal.Rptr. 4]; see also Civ. Code,[3] § 4722, subd. (a); Welf. & Inst. Code, § 11452 [min. family support levels].) Federal statutes require states to consider a family's income and resources when determining whether the family is needy; these laws prohibit the states from providing AFDC benefits for any month in which either income or resources exceed state-prescribed limits, subject to a federal ceiling. (*Lukhard* v. *Reed, supra,* 481 U.S. 368, 371-372 [95 L.Ed.2d at pp. 333-

---

[2] As Denise has not reached the age of majority, the issue presented on appeal is not moot. Even if it were, we would address the question because it presents important issues of law of general public interest. (*County of Los Angeles* v. *Ferguson* (1979) 94 Cal.App.3d 549, 553 [156 Cal.Rptr. 565].)

[3] All further statutory references are to the Civil Code, unless otherwise indicated.

334, 107 S.Ct. 1807]; *LaMadrid* v. *Hegstrom* (9th Cir. 1987) 830 F.2d 1524, 1526.)

■ In 1981, Congress amended the statute authorizing the AFDC program to provide that a family receiving nonrecurring lump sum income is ineligible for benefits for the number of months that the income would satisfy the family's standard of need. (42 U.S.C. § 602 (a)(17); *Gardebring* v. *Jenkins* (1988) 485 U.S. 415, 417 [99 L.Ed.2d 515, 520, 108 S.Ct. 1306].)[4] According to federal regulations, when an "AFDC assistance unit's income . . . exceeds the State need standard for the family because of receipt of nonrecurring earned or unearned lump sum income (including . . . payments in the nature of a *windfall, e.g.,* . . . *lottery winnings* . . .), the family will be ineligible for aid" for a period of time calculated by dividing the family income, including the lump sum, by the appropriate standard of need. (45 C.F.R. § 233.20(a)(3)(ii)(F).) (Italics added.)

Under federal law, if Melody—who has physical custody of Denise—had won the California State Lottery, the proceeds would have been considered income; as a result, she and her child would have been ineligible to receive AFDC benefits for the period of time set by law. (45 C.F.R. § 233.20(a)(3)(ii)(F); see *LaMadrid* v. *Hegstrom, supra,* 830 F.2d at p. 1532 [states must treat "windfall" as income for AFDC purposes].) This result would be consistent with Congress's intent when adopting the 1981 amendment to promote responsible budgeting of lump sum income by AFDC families and to reduce the governmental cost of AFDC programs. (*Medberry* v. *Hegstrom* (9th Cir. 1986) 786 F.2d 1389, 1392; *Barnes* v. *Cohen* (3d Cir. 1984) 749 F.2d 1009, 1014, cert. den. *sub nom., Cohen* v. *Betson* (1985) 471 U.S. 1061 [85 L.Ed.2d 490, 105 S.Ct. 2126].)

But we must address a different question—whether Neal's lottery proceeds constitute income for purposes of determining *his* obligation to pro-

---

[4] Title 42, United States Code section 602 (a)(17) provides: "A State plan for aid and services to needy families with children must: . . . (17) provide that if a child or relative applying for or receiving aid to families with dependent children, or any other person whose need the State considers when determining the income of a family, receives in any month an amount of earned or unearned income which, together with all other income for that month not excluded under paragraph (8), exceeds the State's standard of need applicable to the family of which he is a member—[¶] (A) such amount of income shall be considered income to such individual in the month received, and the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals (i) the sum of such amount and all other income received in such month, not excluded under paragraph (8), divided by (ii) the standard of need applicable to such family, and [¶] (B) any income remaining (which amount is less than the applicable monthly standard) shall be treated as income received in the first month following the period of ineligibility . . . ." As one court has stated it, this provision, "while both highly technical and complex, is anything but elegantly drafted." (*Sweeney* v. *Murray* (1st Cir. 1984) 732 F.2d 1022, 1025.)

vide child support. As Denise's father, Neal has the same obligation to provide for her support as her mother does. "A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life. . . . [A] parent's circumstances and station in life are dependent upon a variety of factors, including his or her earned and unearned income . . . ." (§ 4720, subd. (e); see *In re Marriage of Norvall* (1987) 192 Cal.App.3d 1047, 1056 [237 Cal.Rptr. 770].)

Consistent with AFDC standards, the state has established minimum mandatory child support. (§§ 4720-4722; Welf. & Inst. Code, § 11452.) In determining the parents' ability to pay this minimum child support and to calculate the actual monthly payments each parent must make, the court must determine the annual gross income of each parent. (§ 4721, subd. (a).) Under these provisions, "annual gross income means income from whatever source derived," other than income from child support payments actually received and from public assistance. (§ 4721, subds. (a)-(b).) The Legislature has provided that annual gross income "includes, but is not limited to" salaries, bonuses, interest, worker's compensation benefits, unemployment insurance benefits, and disability insurance benefits. (§ 4721, subd. (a)(1).) ■ The statutory definition of a term as "including" listed items does not necessarily limit the original term to the listed inclusions. (*Trailer Train Co. v. State Bd. of Equalization* (1986) 180 Cal.App.3d 565, 578 [225 Cal.Rptr. 717].) The statute does not specifically include lottery winnings within the definition of income, but the broad reach of the statute satisfies us that the Legislature intended to include such items as lottery winnings within its reach. (See, e.g., § 4721, subd. (a)(3) [liquidated value of investment assets may be income in certain situations].) ■ Therefore, the trial court should have considered all of Neal's lottery winnings when calculating the annual gross income of the family—Neal, Melody, and Denise—for purposes of determining Neal's obligation to provide support to his child.[5]

The county claims that the lottery winnings should also be considered when determining Neal's obligation to reimburse it for AFDC payments made on behalf of his family after he ceased to support them. Federal statutes and regulations require that parent recipients of AFDC assign to the state, as a condition of receiving benefits, any rights to support which their children may have. (*City and County of San Francisco v. Thompson* (1985) 172 Cal.App.3d 652, 656 [218 Cal.Rptr. 445]; see 42 U.S.C. § 602(a)(26)(A); 45 C.F.R. § 232.11.) Federal law also requires a noncustodial parent to reimburse the state either a court-ordered amount of support

---

[5] All $100,000 of the lottery winnings would be included in this sum. However, Neal's annual net disposable income would reflect the deduction of federal taxes he paid on these winnings, reducing the amount to $75,000. (See § 4721, subds. (a), (c)(1).)

or, in the absence of a court order, an amount of support determined by the state in accordance with federal standards. (*City and County of San Francisco* v. *Thompson, supra,* 172 Cal.App.3d at pp. 656-657; see 42 U.S.C. § 656(a); 45 C.F.R. § 302.50.) California law requires some noncustodial parents to reimburse the state for past AFDC payments made (Welf. & Inst. Code, § 11350, subd. (b)), but federal law does not mandate this action. (*City and County of San Francisco* v. *Thompson, supra,* 172 Cal.App.3d at p. 657.) However, the constitutionality of the underlying state statute has been upheld. (*Id.,* at pp. 658-659.)

The amount of mandatory minimum child support that a noncustodial parent should pay and the standard of need established for AFDC payments are interrelated. (See §§ 4720, subd. (d), 4722, subds. (a)-(c); Welf. & Inst. Code, § 11452.) Generally speaking, the county provides AFDC to custodial parents and their dependent children to the extent that the noncustodial parent's support payments fall below the mandatory minimum child support level. (See § 4722; Welf. & Inst. Code, § 11452; *Medberry* v. *Hegstrom, supra,* 786 F.2d at p. 1390 [AFDC eligibility determined by subtracting income from standard of need].) Because of this connection, it is reasonable to employ the same definitions of income for calculating both future child support obligations and reimbursement of past AFDC payments. Therefore, the county is entitled to have the trial court include Neal's lottery winnings in its AFDC reimbursement calculations to the same extent that the court must consider these winnings when calculating his continuing obligation to pay child support.

The trial court erred by failing to include Neal's lottery winnings in its calculations. Therefore, we remand the matter to the trial court for recalculation. On remand, the trial court retains considerable discretion in this matter. First, the trial court must determine the percentage of the parents' combined monthly net disposable income to be set aside for support. (See § 4722, subd. (b)(1).) By setting mandatory minimum standards for child support, the Legislature did not intend to limit child support to those minimum amounts. The trial court retains discretion to set the amount of child support, as long as this amount does not fall below the statutory minimum. (§ 4720, subd. (d); see § 4722, subd. (a); Welf. & Inst. Code, § 11452.) Second, the court may allocate the $15,000 fund between Denise and the county. Third, if there are any funds remaining in the trust account after Denise and the county have received their shares, the court may determine who receives this remainder.

The judgment is reversed. The cause is remanded to the trial court for further proceedings consistent with this opinion.

Anderson, P. J., and Poché, J., concurred.