[No. E025054. Fourth Dist., Div. Two. Jan. 26, 2001.]

In re the Marriage of DENNIS and NANCY SCHEPPERS.
DENNIS SCHEPPERS, Appellant, v.
NANCY SCHEPPERS, Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts B., C. and D.

COUNSEL

Dennis Scheppers, in pro. per., for Appellant.

Janet Stouder Brandon for Respondent.

Downey, Brand, Seymour & Rohwer, Mary J. Martinelli and Frank E. Dougherty for Association of Certified Family Law Specialists as Amicus Curiae upon the request of the Court of Appeal.

## OPINION

**McKINSTER, J.**—A father of minor children appeals from an order modifying his child support obligation. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Dennis Scheppers and Nancy Scheppers married in 1974. The marriage produced six children: Micah, Matthew, Amber, Joseph, Amanda, and Jennifer. When their marriage was dissolved in 1987, all six children were minors.

In July of 1998, the mother applied for and obtained an order to show cause seeking, inter alia, a modification of child support for the two minor children living with her. Following an evidentiary hearing, the trial court set the father's child support obligation at $2,991 per month. The father appeals.

CONTENTIONS

In a somewhat different order, the father contends that the trial court erred in four respects: by failing to include in the mother's gross income sums she received as the beneficiary of a life insurance policy; by failing to impute any income to the mother based upon her ability to earn; by basing the father's income upon an unreasonable work schedule; and by depriving the father of due process and equal protection of the law.

ANALYSIS

A.   *The Trial Court Did Not Err by Excluding the Life Insurance Proceeds from the Mother's Income.*

Micah, the eldest child, committed suicide in February of 1998, when he was 22 years old. In February or March of that year, the mother received $200,568 as the beneficiary of an insurance policy insuring Micah's life. The father argued that those life insurance proceeds should be counted as income to the mother in 1998. The trial court decided that the insurance proceeds were an asset, not income. However, the court did include as income the interest that could be earned from the investment of that corpus. Finding that a reasonable rate of return was 10 percent, the court deemed the mother to receive $1,666 interest income per month. On appeal, the father contends that the trial court erred by not treating the corpus of the life insurance death benefit as income.

The computation of the extent of a parent's obligation to support his or her child begins with the parent's annual gross income. "The annual gross income of each parent means income from whatever source derived, except as specified in subdivision (c) and includes, but is not limited to, the following: [¶] (1) Income such as commissions, salaries, royalties, wages,

bonuses, rents, dividends, pensions, interest, trust income, annuities, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, social security benefits, and spousal support actually received from a person not a party to the proceeding to establish a child support order under this article. [¶] (2) Income from the proprietorship of a business, such as gross receipts from the business reduced by expenditures required for the operation of the business. [¶] (3) In the discretion of the court, employee benefits or self-employment benefits, taking into consideration the benefit to the employee, any corresponding reduction in living expenses, and other relevant facts." (Fam. Code, § 4058, subd. (a).)[1] The only statutory exceptions are (1) "income derived from child support payments actually received," (2) "income derived from any public assistance program, eligibility for which is based on a determination of need," and (3) "[c]hild support received by a party for children from another relationship . . . ." (*Id.*, subd. (c).)

█ Significantly, life insurance proceeds are not among the types of payments specifically included within the scope of the statutory definition. (§ 4058, subd. (a).) Nor are they specifically excluded. (*Id.*, subd. (c).) The Legislature having failed to resolve the issue expressly, it falls to us to determine whether life insurance proceeds fall within the scope of the statutory definition of gross income.

Although the statutory definition is very broad (*In re Marriage of Rocha* (1998) 68 Cal.App.4th 514, 516 [80 Cal.Rptr.2d 376]; *Stewart v. Gomez* (1996) 47 Cal.App.4th 1748, 1753, 1755 [55 Cal.Rptr.2d 531]), it is not unlimited. It does not extend to every type of payment or economic benefit received by a parent. For instance, in addition to the statutory exceptions (§ 4058, subd. (c)), we have previously held that the proceeds of student loans are not income (*In re Marriage of Rocha, supra,* 68 Cal.App.4th at pp. 516-518). Similarly, we conclude that life insurance benefits are not within the statutory definition of income, for the following reasons.

First, it is established that gifts, whether inter vivos (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 529 [70 Cal.Rptr.2d 488]) or testamentary (*County of Kern v. Castle* (1999) 75 Cal.App.4th 1442, 1448-1454 [89 Cal.Rptr.2d 874]), are not within the scope of the statutory definition of income. It is impossible to draw a rational distinction between a gift made by designating the donee as the beneficiary of a will and a gift made by designating the donee as the beneficiary of a life insurance policy.

Second, section 4058 refers to a variety of specific types of insurance benefits, including workers' compensation insurance, unemployment insurance, and disability insurance. (*Id.*, subd. (a).) Clearly, the general category

---

[1]*Unless specified otherwise, all further section references are to this code.*

of insurance proceeds was before the Legislature. Had it intended to include life insurance proceeds, it presumably would have done so. Under those circumstances, it is unlikely that the omission of those benefits was unintentional.

Third, life insurance death benefits are not income under the federal Internal Revenue Code: "Except as otherwise provided in paragraph (2), subsection (d), and subsection (f), gross income does not include amounts received (whether in a single sum or otherwise) under a life insurance contract, if such amounts are paid by reason of the death of the insured." (26 U.S.C. § 101(a)(1).) Although federal law is not conclusive on the interpretation of section 4058, it is persuasive, because "[t]he operative language in subdivision (a) [of section 4058], i.e., 'annual gross income . . . means income from whatever source derived,' was lifted straight from the definition of income in section 61 of the Internal Revenue Code." (*In re Marriage of Schulze, supra,* 60 Cal.App.4th at p. 529.)

Fourth, life insurance proceeds do not meet the common law definition of income. The traditional understanding of "income" is the gain or recurrent benefit that is derived from labor, business, or property (*McCulloch v. Franchise Tax Bd.* (1964) 61 Cal.2d 186, 192 [37 Cal.Rptr. 636, 390 P.2d 412]) or from any other investment of capital (*Wells v. Wells* (1944) 64 Cal.App.2d 113, 115-116 [148 P.2d 126]). Almost every type of income specified by section 4058, subdivision (a), is either a return from labor, business, or property (such as wages, dividends, and rents) or else a substitute for that return (such as disability insurance benefits). Not only is a lump-sum life insurance death benefit not "recurrent," it is not derived from labor, business, or property in the same manner as the statutory examples.[2]

Fifth, including a lump-sum life insurance death benefit as income is impractical. If the mother were deemed to have received $200,000 in income in the year in which the insurance proceeds were paid, what would happen the following year when her income would be $200,000 less? Would she be entitled to immediately move for an increase in child support? And if so, what is the sense in treating the insurance proceeds as income in the first place?

---

[2]The amicus curiae raises the possibility that insurance policy death benefits would be analogous to a return on an investment if the policy premiums were paid by the beneficiary. However, we need not decide whether the proceeds would be income under those circumstances, because there is no evidence in the record that the mother paid the premiums for the policy in question. To the contrary, her counsel stated without contradiction in open court that the mother had received the life insurance proceeds "as a gift from her son," suggesting that the decedent paid his own premiums. Her trial brief is similar ("posthumous gift"). Because the decedent was in the United States Marine Corps at the time of his death, the evidence suggests that the policy was obtained by the decedent through his military service.

Finally, the only other court that we have found that has considered the matter has concluded that life insurance death benefits are not income. The Louisiana Court of Appeal, applying a statutory definition identical to section 4058 in all material respects, has held that life insurance proceeds should not be included as gross income for the purpose of determining the extent of the beneficiary's child support obligation. (*Guy v. Guy* (La.Ct.App. 1992) 600 So.2d 771, 772.) The court's reason is persuasive: "Income is the key factor in our system, not capital or net worth. As stated in *French* [*v. Wolf* (1935) 181 La. 733, 737-738 [160 So. 396, 397]], these concepts are distinctly different. Proceeds paid on a life insurance policy constitute capital and not income." (600 So.2d at p. 773.)

For all these reasons, we hold that life insurance death benefits are not within the scope of gross income as defined in section 4058.

The authorities that the father relies upon for the opposite conclusion are not persuasive. For instance, he notes that in *County of Contra Costa v. Lemon* (1988) 205 Cal.App.3d 683, 688-689 [252 Cal.Rptr. 455], the court held that under the facts of that case, lottery winnings were properly included as income. But as the return on the investment of capital, gambling winnings fall within the traditional concept of income. (*Wells v. Wells, supra,* 64 Cal.App.2d at pp. 115-116.) Similarly, gambling winnings constitute taxable income under both federal and California law. (26 U.S.C. § 74(a) [prizes are income]; *id.,* § 165(d) [gambling losses are deductible from income]; Rev. & Tax. Code, §§ 17071, 17081 [adopting federal provisions]; *Campodonico v. United States* (9th Cir. 1955) 222 F.2d 310, 314 [gambling winnings constitute income].) Therefore, the conclusion that gambling winnings are income under section 4058 does not support the proposition that life insurance death benefits should also be considered to be income.

Moreover, even if lottery winnings did not fall within the general definition of income and were not treated as income under the tax laws, the rule of *County of Contra Costa v. Lemon, supra,* 205 Cal.App.3d 683, has been limited to cases in which a county is seeking to recover reimbursement for public support paid under the Aid to Families With Dependent Children (AFDC) program or when failing to consider the lottery winnings would lead to a support order that is less than the minimum AFDC grant. (*County of Kern v. Castle, supra,* 75 Cal.App.4th at pp. 1450-1451.) Because there is no evidence that the mother here has ever collected AFDC payments, the rule of *Lemon* has no application. The federal cases cited by the father are similarly distinguishable because they both deal with the effect of certain types of payments on the recipient's eligibility for AFDC benefits. (*Lukhard v. Reed* (1987) 481 U.S. 368 [107 S.Ct. 1807, 95 L.Ed.2d 328] [personal injury

awards]; *LaMadrid v. Hegstrom* (9th Cir. 1987) 830 F.2d 1524 [personal injury awards, life insurance proceeds, worker's disability compensation, crime victim compensation].)

The trial court did not err by excluding from the calculation of the mother's gross income the principal sum that she received as a death benefit under her son's life insurance policy.

B.-D.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

The judgment is affirmed. Nancy Scheppers shall recover her costs on appeal.

Ramirez, P. J., and Gaut, J., concurred.

---

*See footnote, *ante*, page 646.