[No. A107485. First Dist., Div. Four. Feb. 27, 2006.]

In re the Marriage of GEORGE A. and CATHY J. HEINER.
GEORGE A. HEINER, Respondent, v.
CATHY J. CHANDLER, Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[†]]**

[†]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of footnote No. 9 and parts I.A.2.; I.B.2.; I.B.3.b., c., d.; and III.C., D., E., F.

## Counsel

William F. Burns for Appellant.

Garrett C. Dailey for Respondent.

## Opinion

**RIVERA, J.**—The question posed in this appeal is whether a lump sum unallocated personal injury recovery is income, as defined by Family Code[1] section 4058, for purposes of calculating child support. We here decide (1) *the entirety* of an undifferentiated lump sum personal injury recovery is not income for purposes of child support, and (2) the determination as to whether *some portion* of an undifferentiated recovery is allocable as income must be left to the discretion of the trial judge.

In this case, the trial court correctly treated the recovery as a fund, and did not err in denying a request for allocation of a portion of the recovery as income. The court's other rulings, regarding the parties' respective incomes and regarding attorney fees, were also sound. Accordingly, we affirm the order.

---

[1] All statutory citations are to the Family Code unless otherwise indicated.

## I. PROCEDURAL AND FACTUAL BACKGROUND

George A. Heiner and Cathy J. Chandler[2] were married in May 1993 and separated in November 1994. The marriage produced two daughters. George filed a petition for legal separation on November 21, 1994.[3]

### A. *First Trial*

#### 1. *Original Order on Parenting Schedule and Child Support*

It appears the parties could not reach agreement on custody, visitation, support, division of property, health insurance, medical expenses and attorney fees, and so proceeded to trial on those issues. The proceedings took place on seven days over a period of 15 months. In May 1997, the court issued its statement of decision, giving the parents joint physical and legal custody of the children, setting a temporary parenting schedule pending further evaluation, and ordering George to pay to Cathy $327 per month in child support.

#### 2. *Order re Attorney Fees**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### B. *Second Trial*

In May 2000, George filed a motion requesting modification of the court's order with respect to visitation and child support. Cathy opposed the motion, and the matter was set for hearing in June 2001. For reasons not revealed in the record, the hearing did not commence until July 2002. The proceedings in July 2002, October 2002 and on February 25, 2003, involved almost exclusively the issues of custody and visitation.[5] Further hearings took place on February 26, 27, and 28, and on July 30, 2003. These related to financial issues underlying the calculation of child support, which issues are the subjects of this appeal.

#### 1. *Evidence of George's Financial Circumstances*

George worked as a dentist for about 10 years, but became disabled from practicing dentistry after he was injured in an incident at a Kmart store in

---

[2] For ease of reference, we shall use the parties' first names. We mean no disrespect in so doing.

[3] Although Cathy's response to the petition is not before us, we surmise from the court's statement of decision, reciting that a judgment of dissolution (status only) had been entered, that she requested a dissolution.

*See footnote, *ante*, page 1514.

[5] The court's order regarding the parenting schedule is not challenged on this appeal.

March 1995. He filed suit, and after a trial the jury returned a verdict in January 1999 awarding $3.8 million in damages. The verdict did not separately state amounts for the various types of damages. Kmart did not pay the judgment, but instead appealed and posted an appeal bond. In October 2000, the verdict was upheld.[6] Kmart and George then entered into a settlement agreement. According to George, Kmart balked at paying the full amount of interest due on the judgment and George, therefore, accepted a settlement in an amount less than the full sum then due. The agreement characterized the entire sum paid as "damages on account of physical and personal injuries." The agreement also made reference to Internal Revenue Code section 104(a) for tax reporting purposes.[7] George did not declare any portion of the settlement proceeds as interest income, because the agreement called for an undifferentiated payment that eliminated any interest component. George admitted on cross-examination that he received about $500,000 more than he would have received had the judgment been paid when entered, but would not agree with counsel's characterization of that amount as "interest." George also testified that he "had more debt because of the delayed payment . . . ."

George received $2,364,500 from the settlement with Kmart, after deducting attorney fees and costs.[8] From the proceeds of the settlement, George paid off a number of debts and purchased a residence. He used most of the remainder to invest in real estate and stocks. He also opened a money market account. He testified that his net worth (as of Feb. 2003) was $1.2 million to $1.3 million in real estate plus about $548,000 in other investments and accounts (including his individual retirement account).

### 2. *Evidence of Cathy's Financial Circumstances**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 3. *Trial Court's Rulings*

After receiving closing briefs, Cathy's objections to George's brief, and George's reply, the court issued a lengthy and detailed "Statement of Tentative Decision on Financial Issues." As pertinent here, the findings were as follows:

---

[6] *Heiner v. Kmart Corp.* (2000) 84 Cal.App.4th 335 [100 Cal.Rptr.2d 854] (*Kmart*).

[7] Internal Revenue Code section 104(a) provides, in pertinent part: "[G]ross income does not include—[¶] . . . [¶] (2) the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness . . . ."

[8] Cathy argued that George received a $2.8 million net recovery. The court found the net recovery was $2,364,500. This number is not challenged on appeal, nor is it germane to the issues before us.

*See footnote, *ante*, page 1514.

The court determined there were three time periods for which support should be calculated. The first period, "T1," commenced when George filed his motion to modify support (May 23, 2000) and ended when George received his personal injury recovery from Kmart (May 2001). The second period, "T2," began in June 2001 and ended in June of 2003, when the court issued its order substantially altering the amount of time each parent had with the children. "T3" is the period commencing after June 2003.

### a. *Findings Regarding George's Income*

The court found that, for the year comprising T1, George's financial circumstances were "in turmoil." Although he had won a substantial verdict from Kmart, the case had been appealed, and the benefit of the judgment had not yet arrived. Because the verdict was not "so liquidated as to constitute a basis for an imputed return," the court relied on George's evidence of his actual income for T1. With respect to T2 and T3, the court found that George's use of his wealth to increase the value of his assets rather than to generate a stream of income "is not in the children's best interest" and, therefore, the court imputed income to George at a rate of 5.5 percent per year for his real estate holdings and at the rates of 2.2 percent and 1.4 percent per year in T2 and T3, respectively, for his savings, stocks and bonds.

b.–d.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### e. *Trial Court's Order*

On January 23, 2004, the court issued its final statement of decision. The court calculated child support as follows: for T1, Cathy owed George $241 per month; for T2, George owed Cathy $685 per month; for T3, George owed (and continues to owe) Cathy $99 per month. The order after hearing was filed on June 11, 2004. Cathy appealed.

## II. STANDARD OF REVIEW

A decision modifying a child support order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found upon examination of the record. (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1150–1151 [62 Cal.Rptr.2d 466].) "Although precise definition is difficult, it is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason,

---

*See footnote, *ante*, page 1514.

all of the circumstances before it being considered. [Citations.] . . . [W]hen two or more inferences can reasonably be deduced from the facts, a reviewing court lacks power to substitute its deductions for those of the trial court." (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598 [153 Cal.Rptr. 423, 591 P.2d 911].) The burden is on the complaining party to establish abuse of discretion. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58].) The showing on appeal is insufficient if it presents a state of facts which simply affords an opportunity for a difference of opinion. (*In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 138 [63 Cal.Rptr.2d 894].)

"We observe, however, that the trial court has 'a duty to exercise an informed and considered discretion with respect to the [parent's child] support obligation . . . .' [Citation.] Furthermore, 'in reviewing child support orders we must also recognize that determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule. . . .' [Citation.] In short, the trial court's discretion is not so broad that it 'may ignore or contravene the purposes of the law regarding . . . child support. . . .' [Citation.]" (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282–283 [111 Cal.Rptr.2d 755].)

Our review of the trial court's findings of fact is limited to determining whether they are supported by substantial evidence. (See *In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 529 [70 Cal.Rptr.2d 488] (*Schulze*).)

## III. DISCUSSION

A. *Should the Entire Proceeds of George's Personal Injury Recovery Be Treated as Income for Child Support?*

Cathy first argues that because the statute defining income for purposes of child support does not exclude personal injury recoveries, the "principal sums" recovered by George from Kmart should have been included in the support calculations, just as lump sum lottery winnings are included. The fact that the award is not treated as taxable income, Cathy argues, is irrelevant.

We observe that this contention was not squarely raised below.[14] This would normally preclude our consideration of it. (*G & D Holland Construction Co. v. City of Marysville* (1970) 12 Cal.App.3d 989, 996–997 [91

---

[14] Cathy hinted at this argument in a footnote in her closing brief: "The four income sources [identified by the trial court] do not include the most important element of Mr. Heiner's income during the relevant time frame and that is the principal amount of the 3.8 million dollar K-Mart Judgment. The Court's repeated refusal to consider evidence . . . that the judgment

Cal.Rptr. 227].) But here, the theory has been thoroughly briefed, and presents an important issue of public policy. Further, the parties do not disagree as to the relevant facts. Accordingly, we will proceed to adjudicate it. (*Raphael v. Bloomfield* (2003) 113 Cal.App.4th 617, 621 [6 Cal.Rptr.3d 583] [a reviewing court may consider points not raised at trial when important issues of public policy are involved or when a contention newly made on appeal presents a question of law].)

To begin with, we agree with Cathy that the Internal Revenue Code's exclusion of personal injury recoveries from taxable income is not controlling. Workers' compensation payments, for example, are also excluded from taxable income (Int.Rev. Code, § 104(a)(1)) but are included as income under Family Code section 4058.

■ The plain language of section 4058, which defines income for purposes of child support, does not speak to personal injury recoveries.[15] True, the statute is broad and uses inclusive language, viz., "[t]he annual gross income of each parent means income from whatever source derived . . . and includes, but is not limited to, the following: [¶] . . . [i]ncome such as . . . annuities, workers' compensation benefits, . . . disability insurance benefits, [and] social security benefits." (§ 4058, subd. (a)(1).) But it has not been read so expansively as to encompass every financial payout. For example, courts have held that life insurance proceeds (*In re Marriage of Scheppers* (2001) 86 Cal.App.4th 646 [103 Cal.Rptr.2d 529] (*Scheppers*)), student loans (*In re Marriage of Rocha* (1998) 68 Cal.App.4th 514 [80 Cal.Rptr.2d 376]), inter vivos gifts (*Schulze, supra*, 60 Cal.App.4th at p. 529), and testamentary gifts (*County of Kern v. Castle* (1999) 75 Cal.App.4th 1442, 1453–1454 [89 Cal.Rptr.2d 874] (*Castle*)) are not income within the statutory definition of section 4058. The common thread in these cases is that such payments do not meet the generally accepted definition of income, that is, "the gain or recurrent benefit that is derived from labor, business, or property [citation] or from any other investment of capital [citation]." (*Scheppers, supra*, 86 Cal.App.4th at p. 650.) In contrast, lottery winnings do constitute income because gambling proceeds are in the nature of a return on the investment of capital. (Cf. *County*

---

amount was composed in whole or in part of claimed lost income by Mr. Heiner and his own admissions of his post injury earning capabilities is more than just perplexing to [Cathy] and her counsel!"

[15] Section 4058 provides, in pertinent part: "(a) The annual gross income of each parent means income from whatever source derived . . . and includes, but is not limited to, the following: [¶] (1) Income such as commissions, salaries, royalties, wages, bonuses, rents, dividends, pensions, interest, trust income, annuities, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, [and] social security benefits . . . . [¶] (2) Income from the proprietorship of a business, such as gross receipts from the business reduced by expenditures required for the operation of the business. [¶] . . . [¶] (b) The court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children."

*of Contra Costa v. Lemon* (1988) 205 Cal.App.3d 683, 688 [252 Cal.Rptr. 455].)[16] Applying this approach, we examine the nature of the payment.

■ In George's case—not unlike the usual personal injury case—the jury was instructed on five components of damages: "medical expenses, past loss of ability to work, present value of lost future 'earning capacity,' pain and suffering, and emotional distress resulting from financial injury." (*Kmart, supra,* 84 Cal.App.4th at p. 343.) None of these components is a gain or recurrent benefit that is derived from labor, business, property or investment of capital. For the most part, personal injury awards are not intended as a gain at all, but as an attempt to make the injured party whole for losses incurred—both physical and financial—due to the injury. We recognize that past and future loss of earning capacity might well be considered a substitute for wages or earned income, akin to disability or workers' compensation benefits which are included in the definition of income. But in this case, those damages were not separately awarded because neither party requested a special verdict with respect to the damages (*id.* at p. 346), and the settlement agreement also provided for an unallocated payment. Under these circumstances, the *entire* amount of a lump sum undifferentiated personal injury award or settlement is not income.[17]

■ This conclusion is congruent with the fact that future economic losses are awarded at a discounted value. (BAJI No. 14.70.) Thus, the law presumes that the amount awarded by the jury in year one will be invested to produce sufficient proceeds to fully compensate the injured party over his or her lifetime. (See, e.g., *Ches. & Ohio Ry. v. Kelly* (1916) 241 U.S. 485, 489–490 [60 L.Ed. 1117, 36 S.Ct. 630].) If 100 percent of a personal injury award were deemed income when received, and if child support were calculated based upon that number, the injured party would be unjustly deprived of the capital needed to produce the additional compensation to which he or she is entitled.

We have also considered Cathy's cited authorities and find them inapposite. In *Butler v. Butler* (1985) 339 Pa.Super. 312 [488 A.2d 1141, 1142], *In re Marriage of Fain* (Colo.Ct.App. 1990) 794 P.2d 1086, and *In re Jerome* (2004) 150 N.H. 626 [843 A.2d 325] (*Jerome*), the appellate courts upheld the lower courts' decisions to treat the parents' personal injury recoveries as income; but

---

[16] One case has restricted *Lemon's* interpretation of section 4058 to public benefit cases where the obligor's actual income was insufficient to meet minimum support standards. (*Castle, supra,* 75 Cal.App.4th at pp. 1448–1454.)

[17] A separate question, discussed *post,* is whether a portion of the lump sum payment can be allocated as compensation for lost income and then treated as income for purposes of child support.

all three cases involved either annuity payments or structured settlements.[18] Thus, the courts in *Butler, Fain,* and *Jerome* did not treat *lump sum* tort awards or settlements as income. (See, e.g., *Jerome, supra,* 843 A.2d at p. 330 ["A lump sum settlement is akin to an asset, [citation], while annuity payments provide a regular income flow. Under [New Hampshire's] legislative scheme, assets are not 'income' for child support purposes. [Citation.]"].)

The fourth case Cathy cites, *Villanueva v. O'Gara* (1996) 282 Ill.App.3d 147 [668 N.E.2d 589, 218 Ill.Dec. 105] (*Villanueva*), presents a different scenario. There, a father received a lump sum undifferentiated settlement as damages for injuries suffered to his hand. (*Id.* at p. 591.) The trial court treated the entire amount as income for purposes of child support and the father appealed. (*Ibid.*) The Court of Appeal reversed, holding that the entirety of a personal injury settlement could not be considered income, because it serves primarily to make the injured person whole, and does not represent a " 'gain or profit.' " (*Id.* at pp. 591–592.) In *Villanueva,* the parties had *agreed* that the settlement included a component representing lost earnings, but could not agree as to the amount, so the court remanded "to determine that portion of the respondent's settlement which was or should have been apportioned to replace the respondent's past and future lost earnings." (*Id.* at p. 593.)

*Villanueva* thus does not support Cathy's position that 100 percent of George's personal injury award should be considered income. Indeed, the *Villanueva* court did not even hold that any component found to represent reimbursement for lost earnings *must* be considered income for purposes of child support, but only that it *may* be so considered. (*Villanueva, supra,* 668 N.E.2d at p. 593.) In so holding, the court also did not rule out the possibility that an apportionment might not be possible where it would be too speculative. (*Id.* at pp. 594–595.)

Other courts have concluded that lump sum personal injury payments are not income. In *Kelly v. Kelly* (La.Ct.App. 2000) 775 So.2d 1237, 1243–1244, the court held that receipt of a lump sum settlement, as opposed to regular periodic payments, consists of a "fund" (which is capital) not a "flow" (which is income), but that interest or other returns from the fund are income. Similarly, in *S.G. v. D.M.* (N.Y.Fam.Ct. 1996) 171 Misc.2d 169 [653 N.Y.S.2d 525, 526], the court concluded that monthly payments from a structured settlement were income, but lump sum payments made as part of the settlement were not income.

---

[18] A structured settlement provides for periodic payments by the tortfeasor or its insurer to the injured party in satisfaction of his claim. (*Ringler Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1170, fn. 1 [96 Cal.Rptr.2d 136].)

■ In harmony with all these authorities, we conclude that the entirety of an unallocated lump sum personal injury settlement or award is not income for purposes of section 4058.

B. *Did the Trial Court Abuse Its Discretion in Failing to Allocate a Portion of George's Recovery as Income?*

Cathy next contends that if the entire amount of George's recovery is not income, the court "deviated from the statutory guideline" in "refus[ing] to consider" that at least some portion of George's personal injury recovery was income. Actually, the court did not "refuse[] to consider" that a portion of the recovery might be treated as income; rather, the court concluded it would be impossible to make the requested allocation. The issue before us is whether George's personal injury recovery is reasonably subject to an allocation as among the various components of damages.

■ Cathy's argument is predicated on the assumption that the components of a personal injury award intended to be compensation for loss of income and loss of earning capacity may be considered by the court as income for child support. George does not dispute this premise, nor do we. Although such revenue does not derive from investments of labor, business or property (*Scheppers, supra*, 86 Cal.App.4th at p. 650), damages for loss of income or earning capacity are unquestionably a substitute therefor. As such, they may be considered as income under section 4058. The disputed question here is whether the trial court is *required* to include such damages in the income calculation. We conclude, as have our sister courts, that this is necessarily a fact-driven determination. Accordingly, it is best left to the discretion of the court, considering all the evidence before it.

■ In *Whitaker v. Colbert* (1994) 18 Va.App. 202 [442 S.E.2d 429, 431, 10 Va.LawRep. 1133] (*Whitaker*), for example, a parent received a personal injury settlement that " 'was not apportioned as to amounts attributable to pain and suffering, permanent injury or disability, lost wages, lost earning capacity or future medicals . . . .' " The underlying case included claims for lost earnings, medical expenses, loss of earning capacity, disability, injury, and pain and suffering. However, because there was no evidence to "elucidate the merits of any of these claims," the trial court found " 'it would be speculative at best as to how to attribute any part of that settlement to prior lost wages as opposed to the other elements of damages.' " (*Ibid.*) The appellate court affirmed, concluding that the evidence supported that determination. (*Id.* at pp. 430–431; see also *Mehne v. Hess* (1996) 4 Neb.App. 935 [553 N.W.2d 482, 488] [proper allocation of lump sum settlement as between income and other components of compensation depends on the facts and circumstances of each case in order to achieve a fair result]; *Good v. Armstrong* (1996) 218

Mich.App. 1 [554 N.W.2d 14, 16] ["the question whether a personal injury settlement should affect the level of child support depends on the particular facts of each case and, thus, should be decided case by case"].) And, because the issue involves fact finding upon evidence, the burden of proving allocation would lie with the party requesting it. Thus, for example, the party seeking to include in the child support calculation a portion of a personal injury award representing lost income or earning capacity must present sufficient evidence upon which the allocation can be made. Similarly, the party wishing to *exclude* from a personal injury award treated as income some allocable portion for pain and suffering or future medical costs bears the burden of presenting sufficient evidence for that determination. (See, e.g., *Taranto v. Dept. of Social Services* (Mo.Ct.App. 1998) 962 S.W.2d 897, 902–903 [court has discretion to adjust child support if the amount is "unjust and inappropriate" where portion of annuity payments was intended—and needed—to pay for ongoing medical treatment].)

In this case, little was offered to support an allocation. Indeed, the only evidence offered—and this, at the close of trial—was a transcript of the testimony of George's two economic experts in the personal injury trial.[19] In those proceedings, one expert testified George would suffer $12 million in lost profits over his lifetime due to his inability to practice dentistry, with a present value of $8 million. (*Kmart, supra*, 84 Cal.App.4th at pp. 341–342.) A second expert testified that the present value of George's net income loss would be $4.8 million if he returned to school to obtain an MBA (Masters of Business Administration) degree and then began a new career using his degree and the "management skills that he's picked up over the last few years."

The colloquy pertinent to Cathy's request was brief: "[Cathy's Counsel]: I would like to renew my request that the Court take judicial notice of those transcripts that you . . . denied . . . previously . . . . Those were the testimony of . . . the experts in the underlying Kmart litigation, who testified that Mr. Heiner's damages of $8 million for lost wages. I want to renew my request that the Court take judicial notice of that, that the proceeds from Kmart were, in fact, for lost wages. Mr. Heiner's own testimony, and as I agree, the verdict did not specify, although he had asked for $8 million in lost wages, he recovered 3.8. [¶] [George's Counsel]: There is—there is no evidence of that, and the Court of Appeal[] soundly rejected that whole argument. It was an undemarcated judgment. There was no indication what the jury applied to what. . . . [¶] The Court: I'm—you know, I'm familiar with the way the personal injury . . . awards are awarded. I don't think I can read into that. Clearly, a portion of the—of the judgment, your claiming lost

---

[19] Prior to the close of trial, Cathy had requested that the court take judicial notice of this testimony as relevant to other issues, such as George's earning capacity.

wages and future lost wages, for me to allocate that would be an impossibility; so I'm going to deny that request."

■ On this record, any attempt to allocate George's recovery among all the elements of his damages would be pure speculation.[20] Cathy offered to the court from the *Kmart* proceedings *only* the plaintiff's expert testimony on loss of profits and loss of net income. This presents such an incomplete picture of George's total damages, that anything other than an arbitrary apportionment would be impossible. (See *Whitaker, supra,* 442 S.E.2d at p. 431 [allocation could not be made because there was no evidence to "elucidate the merits" of the various damage components].) Cathy did not offer any other excerpts from the *Kmart* trial—no testimony describing George's pain and suffering; no evidence of George's medical expenses; no testimony as to George's emotional distress; and no evidence describing the injury itself—all of which were component parts of George's claim against the defendants. (*Kmart, supra,* 84 Cal.App.4th at pp. 347–348.) Cathy also offered none of the testimony introduced at trial by Kmart, which—for all we know—may have convinced the jury not to award *any* damages for lost income. In short, the state of the record wholly supports the trial court's refusal to make an allocation here.[21]

Our ruling does not preclude a different result in other cases. For example, if it is shown that a verdict or settlement was apportioned among the various elements of damages, or if the party seeking an allocation presents sufficient competent evidence to support a rational apportionment, the lost income and earning capacity portion of the verdict may be considered as income available for payment of child support. If it is so considered, the trial court will likely be faced with the corollary issue of how to calculate monthly income for guideline support where, as is the usual case, the lost earning capacity portion of an award is discounted to present value to compensate for income losses over the life expectancy of the injured party. We entrust these matters to the sound discretion of the trial court, to be exercised within the principles articulated in the governing statutes (see, e.g., § 4053), and after thorough consideration of all the facts and circumstances of the case.

---

[20] Indeed, one of Kmart's contentions on its appeal was that the evidence regarding lost "future profits" was too speculative. Division Four of the First Appellate District held the issue had been waived. "Because Kmart failed to request a special verdict on the issue of damages, *we have no way of determining what portion—if any—of the $3.8 million was awarded as compensation for future profits.*" (*Kmart, supra,* 84 Cal.App.4th at p. 346, italics added.)

[21] Because we hold the court properly ruled it could not make a rational allocation on the offer of proof presented, we need not discuss the evidentiary issues raised by George concerning Cathy's requests for judicial notice.

C.–F.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV.  DISPOSITION

The order is affirmed.

Reardon, Acting P. J., and Sepulveda, J., concurred.

---

*See footnote, *ante*, page 1514.