23 Cal.Rptr.3d 707 (2005)
126 Cal.App.4th 111
In re MARRIAGE OF Daniel E. And Shelley A. HENRY.
Daniel E. Henry, Respondent,
v.
Shelley A. Reissmueller, Appellant.
No. G033727.
Court of Appeal, Fourth District, Division 3.
January 28, 2005.
*708 Law Offices of Brian G. Saylin and Brian G. Saylin, Orange, for Appellant.
Law Offices of Jeffrey W. Doeringer and Jeffrey W. Doeringer, Huntington Beach, for Respondent.
Certified for Partial Publication.[*]

OPINION
FYBEL, J.

INTRODUCTION
Following the dissolution of her marriage to Daniel E. Henry, Shelley A. Reissmueller was ordered in October 2000 to pay child support to Henry for their two teenaged sons. Reissmueller became pregnant in December 2002, and developed complications during the pregnancy that caused her to be disabled from work. She therefore sought modification of the child support order because of her reduced income.
Reissmueller's medical complications continued after the birth of her baby; she continued receiving disability payments and ultimately went on unemployment because her employer could not keep her position open.
In January 2004, the trial court entered an order modifying Reissmueller's child support obligation, although not to Reissmueller's benefit. One of the teenaged sons of Henry and Reissmueller had turned 18 years of age, so the support order no longer applied to him. Reissmueller's support payment for the other son increased from $500 per month to $735 per month. On appeal, Reissmueller challenges the court's order on a number of grounds.
We reverse and remand for recalculation of the child support payment. The court erred in calculating Reissmueller's income because her share of the increased equity value in a residence is not income within the meaning of Family Code section 4058. (All further statutory references are to the Family Code, unless otherwise specified.) We must therefore reverse the order modifying Reissmueller's child support obligation, and remand the matter for the trial court to recalculate the proper amount of that obligation due from January 1, 2004 to May 11, 2004. The trial court shall determine how best to ensure any overpayment or underpayment by Reissmueller to Henry is to be corrected.
In all other respects, the court's order was correct. The court's findings regarding Henry's income were supported by substantial evidence; the court did not abuse its discretion in refusing to make the modification order retroactive or in denying Reissmueller's requests for income deductions; and the record does not support a claim of gender bias by the court.
*709 Henry seeks his attorney fees on appeal as a sanction against Reissmueller for filing a frivolous appeal. We deny that request.

STATEMENT OF FACTS
Henry and Reissmueller were married on November 19, 1983, and had two sons, Scott and Shane. Henry filed for dissolution of the marriage on March 30, 1993. On October 26, 2000, the court entered a stipulated order (1) granting the parties joint legal custody of the children, (2) granting Henry primary physical custody of the children, and (3) requiring Reissmueller to pay $500 per month for each child, for a total of $1,000 in monthly child support.
On April 30, 2003, Reissmueller filed an order to show cause for modification of the child support order. Reissmueller declared she was pregnant and medical complications from her pregnancy caused her to become disabled from working in medical sales. Reissmueller's baby was born on July 15, 2003.
On June 11, 2003, Henry filed an order to show cause and affidavit for contempt, due to Reissmueller's failure to make several child support payments. The contempt proceeding was dismissed when Reissmueller deposited the disputed sums into the client trust account of Henry's attorney. Henry and Reissmueller's older son, Scott, turned 18 years of age on July 3, 2003.
On December 18, 2003, the parties stipulated that Reissmueller's modification request could proceed on the parties' written submissions, rather than through live testimony. (Reifler v. Superior Court (1974) 39 Cal.App.3d 479, 114 Cal.Rptr. 356.)
The court issued a tentative decision on December 30, 2003. On January 8, 2004, the court entered findings and an order after hearing (the January 8 Order) consistent with the tentative decision. The court's findings, as relevant to the issues on appeal, were as follows: (1) the children spent 80 percent of their time with Henry, and 20 percent with Reissmueller; (2) Henry's net monthly income was $6,461; (3) Reissmueller's gross monthly income was $8,000; (4) there were no grounds for making the modified child support order retroactive to the date Reissmueller filed her request for modification; (5) Reissmueller's infant child did not justify a hardship deduction for the support of her two other children; (6) Reissmueller was entitled to an income deduction of $260 monthly for health insurance costs, not a deduction of $600 monthly for the temporary costs of COBRA[1] coverage; (7) the appropriate monthly child support for Shane, the younger son, was $735, based on the DissoMaster;[2] and (8) the modified child support amount was effective January 1, 2004.
Reissmueller moved for a new trial, arguing each of the grounds she now asserts on appeal. The trial court denied the motion for a new trial. Reissmueller filed a notice of appeal from the January 8 Order.

*710 DISCUSSION
In considering the modification of a child support order, "[o]ur review is limited to determining whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion. [Citation.] We do not substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order. [Citation.]" (In re Marriage of de Guigne (2002) 97 Cal. App.4th 1353, 1360, 119 Cal.Rptr.2d 430.) "[A] determination regarding a request for modification of a child support order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found from examining the record below. [Citations.]" (In re Marriage of Leonard (2004) 119 Cal. App.4th 546, 555, 14 Cal.Rptr.3d 482.)

I.

THE TRIAL COURT'S FINDINGS OF REISSMUELLER'S INCOME WERE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.
As we shall explain, the trial court's findings regarding Reissmueller's income were not supported by substantial evidence. At the time the trial court considered Reissmueller's request for modification, Reissmueller had no wages, since her employer had been unable to keep her job open during her disability leave. In 2002, she had earned approximately $8,147 per month. In 2003, Reissmueller earned $6,441 per month from January through April; $3,825 per month from May through September 9; and $2,446 per month from September 9 through December 15. This income was comprised of wages and disability benefits. Reissmueller also expected to receive $370 per week in unemployment benefits beginning December 15.
The court found Reissmueller had suffered a temporary reduction in income. "In this matter, [Reissmueller] has had a reduction in income. It would seem that the reduction is not permanent. She got pregnant. She exhibited a disability. Her job was exonerated." Reissmueller argues these findings show the court was punishing her for getting pregnant. We disagree. The quote from the January 8 Order merely sets out the steps leading to Reissmueller's reduction in income: Reissmueller became pregnant; she then became disabled from work as a result of complications during and after the pregnancy; and Reissmueller's employer was unable to hold her position open after her leave had been exhausted.
The court made additional findings that Reissmueller "is highly skilled in a sought-after profession: nursing," she "expects to be re-employed," and she was "currently receiving `unemployment benefits' ... and is seeking employment. Nurses find jobs quickly." There was substantial evidence for each of these findings in the record, and Reissmueller does not argue to the contrary.
The court also found Reissmueller's residence appreciated in value by $240,000 between April 2003 and December 2003, and half of this increase in value belonged to Reissmueller, because the house was jointly owned with her current husband. This half interest calculates to approximately $13,000 per month during that time period. The trial court found Reissmueller's gross income to be $8,000 per month. In its order denying the new trial motion, the court explained its determination of Reissmueller's income as follows: "The court was asked by [Reissmueller] to lower the child support because she had become unable to be employed for a period of time and she argued that without `income' she *711 had no capacity to pay. This court rejected that argument as the court found that pursuant to the definition of `income' (as contained in Family Code [section] 4058) [Reissmueller] had sufficient income to support her children. The court compared a newly filed income and expense declaration with an older one and discovered that [Reissmueller] had some $240,000 increase in her real estate investment. [¶] The court could thus have found that [Reissmueller] had an `income' of $120,000 in the earlier nine months. Rather than apply to [Reissmueller] a monthly average of $13,000 monthly income, the court exercised its discretion and found her income to be only an earlier earned wage sum of $8,000 monthly. Surely, it cannot be said that every court would have ruled as this court has, but it also cannot be said that none would have."
In calculating child support, income is broadly defined. (In re Marriage of Dacumos (1999) 76 Cal.App.4th 150, 154, 90 Cal.Rptr.2d 159.) The controlling statute provides in part: "The annual gross income of each parent means income from whatever source derived ... and includes, but is not limited to, the following: [¶] (1) Income such as commissions, salaries, royalties, wages, bonuses, rents, dividends, pensions, interest, trust income, annuities, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, social security benefits, and spousal support actually received from a person not a party to the proceeding to establish a child support order under this article. [¶] (2) Income from the proprietorship of a business, such as gross receipts from the business reduced by expenditures required for the operation of the business." (§ 4058, subd. (a).)
Here, the court found the increase in the value of Reissmueller's house was income. Henry argues In re Marriage of Destein (2001) 91 Cal.App.4th 1385, 111 Cal.Rptr.2d 487 supports this finding. We disagree. In In re Marriage of Destein, supra, 91 Cal.App.4th at page 1396, 111 Cal.Rptr.2d 487, the trial court imputed to the parent paying child support the rate of return of that parent's separate investment property, which was not income producing, and the appellate court found no abuse of discretion. "Nothing in Family Code section 4058, subdivision (b), suggests that the court's discretion to charge a reasonable rate of return to an investment asset depends on an income-producing history. A parent's primary obligation is to support his or her children according to the parent's station in life and ability to pay. [Citation.] The only statutory limitation on the court's discretion to apply the earning capacity doctrine to investment assets is the best interests of the child. [Citation.]" (Id. at p. 1394, 111 Cal.Rptr.2d 487.)
In re Marriage of Destein, supra, 91 Cal.App.4th 1385, 111 Cal.Rptr.2d 487, is not applicable in this case, however. There, the property was investment property, not the parent's residence. (Id. at p. 1389, 111 Cal.Rptr.2d 487.) Further, the income imputed from the real property was the estimated rate of return on the property as an investment. (Id. at pp. 1397-1398, 111 Cal.Rptr.2d 487.) The appellate court specifically noted, "Patricia has never sought to impute a rate of return to Joseph's equity in his home. Thus the question of what circumstances might justify a trial court's decision to do so is not before us." (Id. at p. 1390, fn. 3, 111 Cal.Rptr.2d 487.) No case cited by Henry or that we have found in our independent research holds the increase in the equity value of a parent's residence constitutes income or earning capacity for purposes of calculating child support under section 4058.
*712 In Mejia v. Reed (2003) 31 Cal.4th 657, 662, 3 Cal.Rptr.3d 390, 74 P.3d 166, during his marriage the husband fathered a child with another woman. The husband and the wife later divorced. (Ibid.) As part of the marital settlement agreement, the husband transferred to the wife his entire interest in their jointly held real estate, and the wife transferred to the husband her share of the husband's medical practice. (Ibid.) The plaintiff (the mother of the husband's child) argued the marital settlement agreement was a fraudulent transfer which rendered the husband insolvent, preventing him from meeting his financial obligations to the plaintiff's child. (Ibid.)
The California Supreme Court concluded the provisions of the Uniform Fraudulent Transfer Act (UFTA) apply to marital settlement agreements. (Mejia v. Reed, supra, 31 Cal.4th at p. 669, 3 Cal.Rptr.3d 390, 74 P.3d 166.) The court held, "Although the UFTA recognizes an unmatured contingent claim as a debt [citation], child support claims present a special case. Support payments usually are paid from present earnings, not liquidation of preexisting assets. The amount of payments owed is computed on the basis of monthly disposable income. [Citation.] This figure is generally based on actual earnings, although the trial court has discretion to consider earning capacity instead of actual income [citation], and child support payments may be changed, in some cases retroactively, if there is a change in actual earnings or earning capacity. [Citations.] [¶] Assets at the time of dissolution play little part in the computation of child support. They may enter indirectly into the calculation in two ways: (1) In assessing earning capacity, a trial court may take into account the earnings from invested assets [citation]; and (2) a court may deem assets a `special circumstance' [citation] that may justify a departure from the guideline figure for support payments [citation]. But these are exceptional situations; the child support obligation is based primarily on actual earnings and earning capacity." (Id. at pp. 670-671, 3 Cal. Rptr.3d 390, 74 P.3d 166, fn. omitted.) Mejia v. Reed supports our conclusion that the trial court could not use the unrealized gain on Reissmueller's residence as income for purposes of calculating child support.
Although the language of section 4058 is expansive, it is not limitless. Every type of income specified by section 4058, subdivisions (a) and (b) is money actually received by the support-paying parent, not merely the appreciation in value of their assets. Indeed, the statute uses the word "derived." If the Legislature had intended that the unrealized increase in the value of an asset should be considered income, it would have said so. Section 4058's "but is not limited to" language does not reach so far as to include the increase in equity of a parent's residence, forcing the parent to sell or refinance the home in order to make court-ordered support payments.
The January 8 Order cannot be affirmed on the ground the $8,000 income amount evidences Reissmueller's earning capacity. The January 8 Order reads, "The evidence is that [Reissmueller] has been clearly capable of earning $8,000 monthly, and so supposes that her new employment will bring her similar income." In its order denying the motion for a new trial, however, the court made clear its finding of Reissmueller's income was based on the increase in the value of her house, rather than her earning capacity. The court did not include any of the necessary findings to support an "earning capacity" calculation under section 4058, subdivision *713 (b).[3] As the party arguing Reissmueller's earning capacity should be used, Henry bore the burden of offering evidence of Reissmueller's job qualifications, salary payable, and job opportunities. (In re Marriage of LaBass & Munsee, supra, 56 Cal.App.4th 1331, 1338-1339, 66 Cal. Rptr.2d 393.) The record on appeal shows that Henry failed to meet this burden.
Annual gross income includes not only wages, but also unemployment insurance benefits and disability insurance benefits. (§ 4058, subd. (a).) In 2003, Reissmueller's annual gross income included all of these. The trial court should have used Reissmueller's actual income to determine the income amount for the DissoMaster calculation. On remand, the trial court shall determine the appropriate amount of Reissmueller's income as of December 30, 2003, and use that income to rerun the DissoMaster to determine the correct amount of Reissmueller's child support payment from January 1, 2004 to May 11, 2004. After May 11, the court's later modification order will be in effect.
Reissmueller also argues the January 8 Order should be reversed because it was effective January 1, 2004, and there was no evidence she would be reemployed that soon. Reissmueller does not argue that making the child support modification immediately effective was in and of itself improper. Because we have directed the trial court to recalculate the child support payment with reference to Reissmueller's income as of December 30, 2003, there is no error in making the modified payment effective January 1, 2004.
At oral argument, Reissmueller's counsel referred to two previously uncited cases, neither of which is directly applicable here. In In re Marriage of Romero (2002) 99 Cal.App.4th 1436, 1439, 122 Cal. Rptr.2d 220, the husband requested a modification of the spousal support order due to his change in income as a result of a disability. The trial court concluded the husband's reduction in income was a material change in circumstances, but denied the husband's request because the husband's new wife's income was used to pay at least a part of the husband's monthly expenses. (Ibid.) The Court of Appeal concluded that in determining the appropriate support order the trial court could not consider either the new wife's income or her expenses. (Id. at p. 1445, 122 Cal. Rptr.2d 220.) Here, the trial court excluded Reissmueller's new husband's income and his share of the equity in the residence in determining Reissmueller's income.
In In re Marriage of Riddle (2005) 125 Cal.App.4th 1075, 23 Cal.Rptr.3d 273, 2005 Cal.App. Lexis 58, another panel of this court concluded the trial court abused its discretion by selecting too short a period for calculating the husband's income in setting support. The trial court considered the husband's income only for two months, which this court determined was "so small a sliver of time to figure income that the determination essentially becomes arbitrary." (Id. at p. 279, 2005 Cal.App. Lexis 58 at p. *14.) Under In re Marriage of Riddle, past earnings may only be used to determine a support order when they are a reasonable predictor of future earnings. *714 (Ibid.) This court also concluded the support order could not be justified on the basis of imputed income. (Id. at p. 280-81, 2005 Cal.App. Lexis 58 at p. *20.) The opinion distinguishes In re Marriage of Destein, supra, 91 Cal.App.4th 1385, 111 Cal.Rptr.2d 487, as we have above, because in that case the support-paying spouse "had sizable separate but illiquid holdings in real estate from which a return could be imputed in order to ascertain income." (In re Marriage of Riddle, supra, at p. 281, 2005 Cal.App. Lexis 58 at p. *20.)

II.-VII.[**]

DISPOSITION
The order is affirmed in part and reversed in part. The matter is remanded with directions to the trial court to calculate Reissmueller's income as of December 30, 2003 based on her wages, disability insurance benefits, and unemployment insurance benefits, not based on the increased value of her house. The trial court is further directed to use Reissmueller's income as of December 30, 2003 in the DissoMaster to calculate the proper child support payment, which should have been in place from January 1, 2004 to May 11, 2004. The trial court shall take reasonable steps to ensure any overpayment or underpayment by Reissmueller to Henry during that time period is corrected. In the interests of justice, because each party succeeded on at least one of the issues on appeal, neither party is to recover costs on appeal.
WE CONCUR: RYLAARSDAM, Acting P.J., and MOORE, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(c) and 976.1, this opinion is certified for publication with the exception of parts II through VII of the Discussion.
[1] The Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) mandates that certain employees and their dependents be offered the option of paying premiums to continue medical coverage for a limited time period after the termination of coverage under a group health plan. (29 U.S.C. §§ 1161-1167; 42 U.S.C. §§ 300bb-1 through 300bb-8.)
[2] "The DissoMaster is one of two privately developed computer programs used to calculate guideline child support as required by section 4055, which involves, literally, an algebraic formula." (In re Marriage of Schulze (1997) 60 Cal.App.4th 519, 523, fn. 2, 70 Cal.Rptr.2d 488.)
[3] "The court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children." (§ 4058, subd. (b).) "`"Earning capacity is composed of (1) the ability to work, including such factors as age, occupation, skills, education, health, background, work experience and qualifications; (2) the willingness to work exemplified through good faith efforts, due diligence and meaningful attempts to secure employment; and (3) an opportunity to work which means an employer who is willing to hire."'" (In re Marriage of LaBass & Munsee (1997) 56 Cal. App.4th at 1331, 1337-1338, 66 Cal.Rptr.2d 393.)
[**] See footnote *, ante.