Filed 11/25/13  Marriage of Minkler CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Marriage of DEBBIE and SCOTT MINKLER.<br><br>_____<br><br>DEBBIE MINKLER,<br><br>     Appellant,<br><br> v.<br><br>SCOTT MINKLER,<br><br>     Respondent. | B242915<br><br>(Los Angeles County<br>Super. Ct. No. BD 456916) |

   APPEAL from an order of the Superior Court for the County of Los Angeles. Maren E. Nelson, Judge.  Affirmed.

   Law Offices of Richard A. Marcus and Richard A. Marcus for Appellant.

   William W. Oxley; Broedlow Lewis, Jeffrey Lewis and Kelly Broedlow Dunagan for Respondent.

_____

**SUMMARY**

In this family law case, Debbie Minkler sought modification of a child support order after her former husband, Scott Minkler, received a large lump sum in settlement of a lawsuit. The trial court ruled the settlement funds were not income for purposes of child support. The court imputed a reasonable rate of return on the portion of the settlement funds remaining for investment ($1,141,000) after Mr. Minkler bought and improved a residence, repaid accumulated debt, and purchased "items for living" (automobile, furniture, family vacations and so on). The court declined to deviate upward from guideline child support.

Ms. Minkler appeals. She contends the settlement funds constituted income under Internal Revenue Code (26 U.S.C. § 61), and therefore those monies must be included in the calculation of guideline child support. Alternatively, she challenges the court's refusal to impute income on the $600,000 the husband spent to purchase and improve a family home, and argues that in any event the court should have deviated upward from guideline child support.

We affirm the trial court's order.

**FACTS**

The Minklers were divorced in December 2007. They shared custody of their two children equally. Both had fluctuating incomes; Mr. Minkler was a contractor and Ms. Minkler's income included commissions. From January 2008, Mr. Minkler paid guideline child support of $305 monthly, and beginning in April 2010, Ms. Minkler paid Mr. Minkler $444 monthly, plus 21.6 percent of her earnings in excess of $4,355.

In April 2011, Mr. Minkler settled a lawsuit against Safeco Insurance Co. for breach of contract and tortious breach of the covenant of good faith and fair dealing. In the lawsuit, Mr. Minkler had alleged Safeco wrongfully denied coverage for his claim of negligent supervision against the mother of Mr. Minkler's childhood soccer coach. The soccer coach allegedly sexually molested Mr. Minkler over a period of several years, in the mother's home and with her knowledge. (Mr. Minkler had obtained a default judgment against the mother for over $5 million; in a later settlement, the mother

2

assigned her claims against Safeco to Mr. Minkler in exchange for a covenant not to execute on the judgment.)  (See *Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 319-320.)  Mr. Minkler's settlement with Safeco occurred after the Supreme Court ruled that an exclusion in the mother's homeowners policy for intentional acts did not preclude coverage for the mother's liability, if any, arising from the molestations.  (*Id.* at p. 333.)

Mr. Minkler's settlement was confidential, but he deposited $2.1 million in a brokerage account in May 2011.  (By the terms of the judgment dissolving the Minklers' marriage, any settlement from his molestation case or bad faith claim against Safeco was Mr. Minkler's separate property.)

Mr. Minkler did not tell Ms. Minkler about the settlement, and continued to receive Ms. Minkler's child support payments.  But Ms. Minkler discovered that Mr. Minkler's lifestyle "changed dramatically" since May 2011.  The children told her about various trips they took with Mr. Minkler (in May to Paradise Cove in San Diego, two trips to Seawall in Ventura in June and July, and a trip to Lake Shasta with a week-long stay on a houseboat in August), and she discovered Mr. Minkler had hired a maid once a week and bought a new car.  Mr. Minkler's expenditures also showed "resort trips" to Ojai in May and Laguna Beach in June, and a vacation in St. Croix in July that did not include the children.

In August 2011, Ms. Minkler sought a modification of child support (and other orders not at issue in this appeal), "taking into account [Mr. Minkler's] settlement with Safeco and his new lifestyle . . . ."  Her declaration also asserted that her income in 2012 would be reduced by about $55,000 because of the sale of her company and consequent changes in her ability to earn commissions.

Mr. Minkler resisted providing any information about the settlement funds, and the court ordered him to submit a fully completed income and expense declaration, including all of his assets.  Apparently by agreement, Ms. Minkler and her lawyer and expert eventually received access to the terms of Mr. Minkler's confidential settlement.

Both parties filed further income and expense declarations in May 2012. Mr. Minkler declared assets of about $1,141,000 "held with my business known as Distressed Property Management (DPI): $663,502 real estate holdings . . . and $477,505 cash," as well as a family home in Valencia valued at $600,000.[1] The home was "a middle-class foreclosure home" for which he paid $478,000, and he invested about $122,000 in improvements. Mr. Minkler's expert opined that Mr. Minkler could invest and receive a return of 1.02 percent currently, and that after his personal income situation improves, his investment options would shift and the allocation would change to an average of 2.49 percent.

Ms. Minkler asserted, based on Mr. Minkler's account statements, that Mr. Minkler spent more than $120,000 on "entertainment and luxury item purchases" from May 2011 through January 2012. She contended the trial court should calculate child support by including the settlement monies and Mr. Minkler's stipulated self-employment income of $2,500 per month and dividing by 12, to arrive at monthly gross income for purposes of calculating guideline support. Ms. Minkler argued that under federal tax law, the settlement proceeds were taxable income (and therefore income under Family Code section 4058)[2] unless they were received on account of physical personal injuries, and Mr. Minkler's lawsuit was for breach of contract and breach of the implied covenant of good faith and fair dealing. If the court decided instead to attribute a reasonable rate of return to the settlement monies, Ms. Minkler requested the 8.71 percent return calculated by her expert, plus Mr. Minkler's income from his "flipping houses"

---

[1] Mr. Minkler explained the current amount of assets after receipt of the one-time settlement payment this way: "After losing my contracting business and years of unemployment/sporadic day labor, I accrued over $125,000 in loans, debt and obligations which have been repaid. In addition, I paid over $75,000 in attorney fees (tax attorney, business attorney, family law attorney, eviction attorney, and [Ms. Minkler's] counsel). I also purchased items for living like a reliable used $40,000 automobile (2008 Chevrolet Tahoe), furniture, never taken before family vacations, wedding ring for my wife, etc."

[2] Statutory references are to the Family Code unless otherwise specified.

4

business, along with an upward departure from guideline support to permit the children to share in Mr. Minkler's new life style.

The court ordered Mr. Minkler to pay Ms. Minkler $299 per month as basic guideline child support, beginning September 1, 2011.[3] The court found it irrelevant whether the settlement monies were taxable income for income tax purposes, because "a one-time receipt of a settlement of a lawsuit under the Family Code [is not] income for purposes of child support." The court found it was not appropriate to impute income on the monies that Mr. Minkler invested in his home. And, "[o]n the issue of imputing a reasonable rate of return on [Mr. Minkler's] $1,141,000," the court found that Mr. Minkler's proposal "[was] more realistic in terms of what it was likely that he could earn," that is, 2.49 percent. Finally, the court found no reason to deviate from guideline support, since there was no significant difference in the net spendable income of the parties once support was paid ($3,562 for Ms. Minkler and $4,040 for Mr. Minkler), and housing expenses also were relatively equal and relatively modest on both sides.

Ms. Minkler filed a timely appeal from the court's order.

## DISCUSSION

### 1.    The Standard of Review

"A trial court's determination to grant or deny a request for modification of a child support order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found from examining the record below." (*In re Marriage of Pearlstein* (2006) 137 Cal.App.4th 1361, 1371 (*Pearlstein*).) But " 'the trial court's discretion is not so broad that it "may ignore or contravene the purposes of the law regarding . . . child support . . . ." [Citation.]' [Citation.]" (*Ibid.*) And, "to the extent that the trial court's decisions reflect an interpretation of the statutory definition of

---

[3]     Other orders were made for additional child support to flow to and from each parent depending on income they receive from employment in excess of specified amounts (referred to by the court as a "bilateral *Smith-Ostler*" order), and for stipulated arrearages, but these orders are not contested. (See *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33.)

5

income for child support purposes, this is a question of law that we review de novo." (*Id.* at pp. 1371-1372.)

### 2. Applicable Legal Principles

Section 4058 defines the annual gross income of each parent. The definition is broad ("income from whatever source derived"), but does not encompass "every financial payout." (*In re Marriage of Heiner* (2006) 136 Cal.App.4th 1514, 1521 (*Heiner*). Thus, courts have held that life insurance proceeds, student loans, inter vivos gifts, and testamentary gifts "are not income within the statutory definition of section 4058." (*Ibid.*, citing cases; see also *Pearlstein, supra,* 137 Cal.App.4th at p. 1373 ["the principal amount of a gift, inheritance, or lump sum personal injury award need not be treated as income for child support purposes"].) "The common thread of these cases is that such payments do not meet the generally accepted definition of income, that is, 'the gain or recurrent benefit that is derived from labor, business, or property [citation] or from any other investment of capital [citation].' [Citation.]" (*Heiner, supra,* at p. 1521.)

### 3. This Case

#### a. The income issue

Here, the trial court found that a one-time receipt of settlement funds is not income for child support purposes, reasoning that case law requires the court "to make a reasonable approximation of what the ongoing income will be over time." (See *In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1082 (*Riddle*) ["the idea . . . is to have a reasonable *predictor* of what each spouse or parent will earn in the immediate *future*"; "[t]he theory is that the court is trying to predict *likely* income for the immediate *future*"]; see also *In re Marriage of Henry* (2005) 126 Cal.App.4th 111, 121 ["Under . . . *Riddle*, past earnings may only be used to determine a support order when they are a reasonable predictor of future earnings."].) Since there was no evidence Mr. Minkler would be receiving any other settlements or monies, the trial court found Ms. Minkler's proposal to include the settlement monies was "inconsistent with the statute in light of the Legislature and existing case law."

Ms. Minkler insists that the settlement proceeds must be considered income for calculating guideline child support, "unless they are excludable under [section 104(a)(2) of the Internal Revenue Code] as damages on account of physical personal injuries or sickness." (See 26 U.S.C. § 104(a)(2) [excluding from gross income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness"].) She relies on federal tax cases, the expansive language of section 4058 ("income from whatever source derived," with specified exceptions), and language from *Riddle*. (In *Riddle*, the court, rejecting a husband's claim that his monthly income was necessarily his "cash flow," stated that section 4058's language "was 'lifted' straight from the Internal Revenue Code," and "[t]hat means that if the tax laws say you have income because of the forgiveness-of-debt, you have income, and that forgiveness-of-debt income must go into the calculation of adjusted gross income under section 4058, subdivision (a) . . . ." (*Riddle, supra,* 125 Cal.App.4th at p. 1080 [also noting there was authority for ameliorating the harsh effects of assessing "phantom" income in a given case].) We are not persuaded by Ms. Minkler's argument.

First, Ms. Minkler errs in her fundamental assumption that income for federal tax purposes is necessarily identical to income for child support purposes. It is not. While federal tax law is "persuasive" on the interpretation of section 4058, it is not conclusive. (*In re Marriage of Scheppers* (2001) 86 Cal.App.4th 646, 650 (*Scheppers*); see Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2013) ¶ 6:201.2a, p. 6-88 (rev. #1, 2011) ["[i]tems taxable to the parent but that are not part of the parent's cash flow or actual income received may properly be *excluded* as income in the support calculation"; "[c]onversely, it may be appropriate (and proper) to include certain items as income . . . even though *not taxed* to the parent"]; see also *In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 735 ["section 4058 specifically includes some types of income, such as workers' compensation payments, that are excluded from taxable income under the Internal Revenue Code," and the Internal Revenue Code's "express exclusion of gifts and inheritances [citation] is not found in section 4058"; "[t]hese

7

disparities flow from the differing purposes of the two legal schemes"; "while the tax model will be helpful in many cases, it is not controlling"].)

Second, it is equally clear that the settlement proceeds do not meet "the generally accepted definition of income . . . ." (*Heiner, supra,* 136 Cal.App.4th at p. 1521; see *Scheppers, supra,* 86 Cal.App.4th at p. 650 ["[t]he traditional understanding of 'income' is the gain or recurrent benefit that is derived from labor, business, or property . . . or from any other investment of capital"; "[a]lmost every type of income specified by section 4058, subdivision (a), is either a return from labor, business, or property (such as wages, dividends, and rents) or else a substitute for that return (such as disability insurance benefits)"].) Here, the settlement proceeds were not "recurrent," nor were they derived from "labor, business, or property."

Third, while Ms. Minkler insists that monies received from a breach of contract lawsuit must be treated as income under section 4058, she cites no California authority for that proposition. There are, however, California cases involving personal injury settlements that support the opposite conclusion. "[T]he entirety of an unallocated lump sum personal injury settlement or award is *not* income for purposes of section 4058." (*Heiner, supra,* 136 Cal.App.4th at p. 1524, italics added.) If components of a personal injury award are "damages for loss of income or earning capacity," those components "are unquestionably a substitute" for revenue derived from investments of labor, business or property, and "they may be considered as income under section 4058." (*Ibid.*) But even then, the trial court is not "*required* to include such damages in the income calculation"; "this is necessarily a fact-driven determination" and "best left to the discretion of the court, considering all the evidence before it." (*Ibid.*) And, "the party seeking to include in the child support calculation a portion of a personal injury award representing lost income or earning capacity must present sufficient evidence upon which the allocation can be made." (*Id.* at p. 1525.) Here, Ms. Minkler does not contend that any part of the settlement monies was allocated to lost income or earning capacity.

8

In sum, we see no basis for reversing the trial court's conclusion that the one-time payment of settlement monies in this case should not be treated as income for purposes of child support.

### b. Attributing a reasonable rate of return to the settlement proceeds

Guideline child support is calculated on the basis of net disposable income, not assets. Thus, one-time inheritances and gifts themselves generally are not income, but interest, rents and dividends actually earned from inheritances or gifts are income for purposes of child support. (§ 4058, subd. (a)(1); *County of Kern v. Castle* (1999) 75 Cal.App.4th 1442, 1453; Hogoboom & King, Cal. Practice Guide: Family Law, *supra,* § 6:209.5, p. 6-98.4 (rev. #1, 2011), § 6:211.20, p. 6-98.12 et seq. (rev. #1, 2013).) And, "the court has discretion to *impute* income based on an inheritance (or gift) corpus or on interest a lumpsum cash inheritance (or gift) could have earned if invested; this is so even if the parent has entirely exhausted the corpus." (Hogoboom & King, *supra*, § 6:209.6, p. 6-98.5 (rev. #1, 2011).)

Ms. Minkler argues that if we reject her claim the settlement proceeds were income, as we have, then the entirety of the proceeds should be treated as an asset, and a reasonable rate of return should be imputed to the entire amount – rather than, as the court did, only to the $1,141,000 remaining after Mr. Minkler bought a residence and made other expenditures. Specifically, Ms. Minkler challenges the court's refusal to impute income on the $600,000 that Mr. Minkler used to purchase and improve a family home. We see no abuse of discretion.

"[T]he increased equity value in a residence is not income within the meaning of . . . section 4058." (*In re Marriage of Henry, supra,* 126 Cal.App.4th at p. 114; see *id.* at pp. 118, 119 [distinguishing investment property from a parent's residence; the expansive language of section 4058 "does not reach so far as to include the increase in equity of a parent's residence, forcing the parent to sell or refinance the home in order to make court-ordered support payments"]; see also *In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1244 ["the trial court may properly attribute income based on an assumed reasonable rate of return on underutilized or non-income-producing investment assets,"

9

but "a supporting parent's home equity generally may not be considered for the purpose of calculating child support absent a showing of special circumstances under section 4057, subdivision (b), that render guideline support unjust or inappropriate"].)

Here, Ms. Minkler argues, without citation of authority, that Mr. Minkler "should not be permitted to divest himself of a large chunk of his settlement proceeds by paying all cash for his residence to attempt to convert his taxable income into an asset purportedly beyond consideration of the Court for purposes of calculating support." But Ms. Minkler produced no evidence suggesting Mr. Minkler was attempting to keep his income "artificially low" (see *In re Marriage of Loh* (2001) 93 Cal.App.4th 325, 331), and Mr. Minkler's declaration explained he could not qualify for a loan for the purchase of the home because of extremely poor credit and no regular employment. We see in these circumstances no basis for finding an abuse of discretion.[4]

### c. The "special circumstances" issue

Under section 4057, the amount of child support established by the formula in section 4055 is presumptively correct. (§ 4057, subd. (a).) This presumption may be rebutted "by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case," because one or more specified factors is found to be applicable. (*Id.*, subd. (b).) One of the specified factors is that application of the formula "would be unjust or inappropriate due to special circumstances in the particular case." (*Id.*, subd. (b)(5).) While "it is often appropriate to consider a parent's assets or wealth in fixing child support," this is done after the calculation of guideline support, and "the assets themselves (as distinguished from actual or imputed income from assets) come into play, if at all, as a . . . 'special circumstances' adjustment to presumptively-

---

[4] Ms. Minkler refers to the trial court's failure to attribute a reasonable rate of return to "all" of Mr. Minkler's settlement proceeds, but in her brief specifically challenges only the court's refusal to impute income on the $600,000 used to purchase and improve the family home. Consequently, no issue is presented about Mr. Minkler's use of settlement proceeds to pay his debts, attorney fees, and "items for living." (See fn. 1, *ante*.)

10

correct formula support . . . ." (Hogoboom & King, Cal. Practice Guide: Family Law, *supra,* § 6:211.20, p. 6-98.12 et seq. (rev. #1, 2013), citing cases, italics omitted.)

Ms. Minkler argues that the trial court abused its discretion in refusing to deviate upward from the guideline support calculation, because the $299 monthly payment the court ordered "does not permit the children to share in [Mr. Minkler's] unusual wealth" and "extravagant lifestyle." Again, we find no abuse of discretion.

Ms. Minkler has not shown "unusual wealth" or "extravagant lifestyle" within the meaning of the cases she cites. In *In re Marriage of Hubner* (1988) 205 Cal.App.3d 660, 667 (*Hubner*), the trial court "abused its discretion by depriving the child of his right to share in his father's unusual wealth." In *Hubner*, the trial court awarded child support of $2,215 monthly, where the father listed net monthly disposable income of more than $43,000 (and the mother listed net monthly disposable income of $1,000); the trial court "failed to consider the father's stipulation that he could pay any reasonable amount ordered by the court, and failed to consider the father's standard of living." (*Ibid.*) In *In re Marriage of Ostler & Smith, supra,* 223 Cal.App.3d 33, an "order for additional support, based on a percentage of [the father's] future bonuses, was within the trial court's discretion." (*Id.* at p. 37.) The mother had "no income, either from earnings or assets," and had "devoted her time during marriage mainly to domestic duties and raising four children." (*Id.* at p. 41.) The court merely referred to the trial court's determination of "the reasonable needs of the two minor children, taking into consideration their right to share in their father's higher standard of living." (*Id.* at p. 54.) And in *McGinley v. Herman* (1996) 50 Cal.App.4th 936, 945 (*McGinley*), "the trial court's assessment of the best interests of the child did not give sufficient consideration to the child's right to share in the standard of living of his extraordinarily high earning father."

None of these cases supports Ms. Minkler's claim that the trial court abused its discretion by not deviating upward from guideline child support. Mr. Minkler is not the "extraordinarily high earning father" described in *McGinley*, nor does he possess "unusual wealth" of the sort described in *Hubner*. Here, the trial court expressly recognized the question whether the children were sharing in Mr. Minkler's lifestyle:

11

"[O]bviously they are sharing in it when they live with the father. The question is[,] is the mother getting enough support so that they are sharing in it when they are living with her." The court concluded they were: "[W]hen you look at the net spendable incomes of the parties, once the support is paid, mother's net spendable income is [$]3562, father's is [$]4040. There's not a significant difference there."

In sum, "trial courts are invested with substantial discretion in this area, and . . . no California authority expressly mandates the consideration of a parent's assets in awarding child support." (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 292.) Under the circumstances here, we see no abuse of discretion in the trial court's decision that this was not an appropriate case for an upward deviation from guideline child support.

## DISPOSITION

The order is affirmed. Scott Minkler is to recover his costs on appeal.


GRIMES, J.


We concur:

BIGELOW, P. J.


FLIER, J.


12