Filed 11/6/15  Marriage of Aberle CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of MATTHEW B. and KIM MAREE ABERLE. | B259029 |
| | (Los Angeles County Super. Ct. No. BD545995) |
| MATTHEW B. ABERLE, | |
| Respondent, | |
| v. | |
| KIM MAREE ABERLE, | |
| Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Patrick A. Cathcart, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Morrison & Foerster and Mark R. McDonald for Appellant.

Honey Kessler Amado for Respondent.

INTRODUCTION

The marriage of appellant Kim Aberle and respondent Matthew Aberle[1] was dissolved pursuant to a stipulated judgment. They agreed to share custody of their child, Leonie, with Kim having primary physical custody. They also agreed Matthew would pay child support. Thereafter, Matthew requested that custody be modified, and Kim requested that child support be increased. After a hearing, the family court increased Matthew's physical custody of Leonie and increased child support.

Kim appeals, contending that the family court refused to allow her witnesses to testify at the hearing, in violation of Family Code section 217.[2] Kim also contends that the court erred by failing to impute a reasonable rate of return to Matthew's art collection for the purposes of calculating child support; imputing a minimum wage earning capacity to her; characterizing spousal support as income; and denying her attorney fees. We agree that the court relied on an incorrect legal ground to deny Kim attorney fees, and we therefore reverse and remand on that issue only. We reject Kim's remaining contentions and otherwise affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Matthew and Kim were married on August 20, 2007. Matthew worked as a music supervisor. Primarily, however, Matthew collected art, sometimes selling it. Matthew and Kim had one child, Leonie, born in January 2007. When Leonie was 15 months old, she contracted a virus, resulting in ongoing developmental delays and requiring therapy.

Matthew and Kim separated on March 24, 2011, and on August 24, 2012, their marriage was dissolved, pursuant to a stipulated judgment. They agreed to joint legal custody of Leonie and to shared physical custody, with Matthew having Leonie from Thursday afternoons to Sunday mornings, and with Kim having her Sunday mornings to Thursday afternoons. The parties waived spousal support, in consideration for which

---

[1] We refer to the parties by their first name to avoid confusion. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475, fn. 1.)

[2] All undesignated statutory references are to the Family Code.

Matthew paid Kim the non-taxable amount of $600,000, $350,000 of which was immediately payable and the remaining $250,000 was payable in monthly installments of $6,944. Matthew was ordered to pay $1,500 per month in child support.

In July 2013, Kim was drinking every day, including when Leonie was with her.[3] In August 2013, Kim was treated for alcoholism and bipolar disorder.

Based on allegations that Kim was abusing alcohol and failing to take Leonie to medical and school-related appointments, Matthew, on October 10, 2013, filed a request to modify child custody; specifically, he asked for sole legal custody for "medical, educational and extra-curricular purposes." He also asked for primary physical custody of Leonie and that Leonie's nanny supervise Kim's custodial time.

Kim then filed her request to modify child support, from $1,500 to $6,000 per month. She also requested attorney fees and costs.

After a hearing on June 4, 2014, the family court changed the custody schedule to about 50-50 physical custody. Matthew was also given sole legal custody to determine Leonie's "therapies and therapists." The court denied Kim's request to impute a rate of return or to assign a value to Matthew's art collection. The court also imputed monthly minimum wage income of $1,560 to Kim. The court reduced child support from $1,500 to $1,131 per month through August 2014, increased to $2,033 per month thereafter. The court denied Kim's attorney fees request, on the ground her attorneys represented her pro bono.

---

[3] Kim had previously, in July 2012, been treated for alcoholism and bipolar disorder.

**DISCUSSION**

**I.    The family court did not violate section 217.**

Kim contends that the family court violated section 217[4] when, at the hearing on the requests to modify custody and child support, it "refused to receive live testimony from any witness other than Kim." The contention is meritless.

The family court did not "refuse" to let Kim call live witnesses.[5] Instead, at the hearing's outset, the court stated its tentative was not to modify custody, a ruling favoring Kim. Kim's counsel, Mark McDonald, responded:

"Mr. McDonald:  It's all in the transcripts which have been lodged, and she's [Kim] here to testify.

"The court:  Well, is she going to testify?

---

[4]    Section 217 states:

"(a) At a hearing on any order to show cause or notice of motion brought pursuant to this code, absent a stipulation of the parties or a finding of good cause pursuant to subdivision (b), the court shall receive any live, competent testimony that is relevant and within the scope of the hearing and the court may ask questions of the parties.

"(b) In appropriate cases, a court may make a finding of good cause to refuse to receive live testimony and shall state its reasons for the finding on the record or in writing. The Judicial Council shall, by January 1, 2012, adopt a statewide rule of court regarding the factors a court shall consider in making a finding of good cause.

"(c) A party seeking to present live testimony from witnesses other than the parties shall, prior to the hearing, file and serve a witness list with a brief description of the anticipated testimony. If the witness list is not served prior to the hearing, the court may, on request, grant a brief continuance and may make appropriate temporary orders pending the continued hearing." (See also Cal. Rules of Court, rule 5.113.)

[5]    Kim submitted a list of 15 witnesses that she "may" call. It stated what each witness may testify, for example, "how well Leonie is doing with the current custody arrangement and the reasons it should not be changed"; "investment options and expected returns"; Matthew's "difficulty controlling his anger and emotions"; and the value of Matthew's art collection. The fifteenth witness was not named, but was merely described as an "[e]xpert on investment return on traditional income generating investments." Matthew moved to strike the witness list, on the ground it would not assist the trier of fact, was irrelevant, unduly prejudicial and violated section 217.

4

"Mr. McDonald: Your honor, I'm going to have to say at this point, this is with a little bit of my noviceness, I expected there would be testimony, live testimony by the witnesses today. [¶] If –

"The court: Well, number one, we haven't seen – I don't know if the witnesses are all in the courtroom right now, and they should have been excluded. [¶] Number two, your witness list does not state what the testimony will be, and it indicates that they might be called. It doesn't say they will be called. So it's not an appropriate request for testimony under 217. [¶] But if you want to put your client on, briefly, at any point today, let me know. But I'm not going to have an evidentiary hearing in the morning.

"Mr. McDonald: Okay. I understand.

"The court: Because I have got other people that have –

"Mr. McDonald: I understand. [¶] *And, your honor, I don't believe it is necessary.* Your tentative ruling was that the circumstances today do not justify changing the judgment that was entered. . . ." (Italics added.) Therefore, based on the court's tentative ruling, Kim's counsel *agreed* witnesses were unnecessary.

In any event, after additional argument, the family court asked for testimony regarding whether Leonie was missing homework assignments and therapy sessions. Kim then testified, until the court had to attend to other matters on calendar: "So if we are going to proceed now with a lot more testimony, then I'm going to have to put you over until I finish the rest of the matters this morning." The court repeated it wasn't inclined to change "custody from joint legal," although a change in visitation might be warranted. The court recessed to handle other matters, and recalled the case later in the morning, at which time the court said it wanted to move onto the support issue. The court did so—without objection from counsel.

The parties continued to argue about whether a rate of return should be imputed to the art collection, and then the court ruled: "He is generating a relatively level, level of income that he's been generating for some time by the [sale] and purchase of art, and that does not, in my mind, warrant assigning a value to the art collection which is then added as income available for support. [¶] So that's my ruling on that one."

5

After a noon recess, the parties continued to discuss support issues. Kim's counsel argued that Matthew's art collection was relevant to income and to showing their lifestyles were disparate: "And to make that showing, your honor, I don't think there's any way to avoid testimony. And I, frankly, expected when we came in today it was going to be live testimony. . . . [¶] I would love to avoid it, but if that's the route, I think I need to make a record, at least make the request that I would like [Matthew] to testify. I want him to testify about the fact that he doesn't really seek out work in this avocation of being a music supervisor. He is essentially retired. He lives – he travels around the world buying contemporary art and selling it, and he's able to make a very nice income from that. And still his art collection is appreciating in value and growing over time to where he's now got a $12 million asset. [¶] And I have an expert witness who will testify to that, which I thought I was going to be able to put on today. So that's – I make that request. Let me deal with the other two questions you asked." Counsel continued to argue but made no further request to put on witnesses and did not ask the court for a ruling on any request to call additional witnesses.

These events belie Kim's contention she was not allowed to put on live testimony. True, the family court found Kim's witness list to be inadequate. But the court never said it would not allow live testimony. Instead, the court expressed concern it did not have time to conduct a full evidentiary hearing in the morning. Nonetheless, the court allowed Kim to testify. Kim further mischaracterizes the record when she alleges that the court "did not allow" redirect examination. Kim was testifying when the court informed the parties it had to handle other cases but would recall the matter later in the morning. When the case was recalled, the court moved onto the support issue. Kim's counsel made no objection or otherwise said it wanted Kim to continue testifying. To the extent counsel wanted to examine Kim further, he failed to ask, and therefore the issue has been forfeited. (See *People v. Simon* (2001) 25 Cal.4th 1082, 1103.)

We also disagree that the family court refused to allow witnesses other than Kim to testify. Rather, Kim's counsel agreed that testimony was unnecessary, given the court's tentative in Kim's favor. Kim's counsel did say later that he wanted to call Matthew and an expert witness regarding the art collection—*but this was after the court had already ruled it would not impute a rate of return to the art collection.* Moreover, counsel did not wait for or ask for a ruling from the court on his untimely request. Indeed, counsel did not even specify the expert he wanted to testify. Instead, counsel continued to argue. Then, when the court began to give its support order, Kim's counsel still didn't object.

The totality of the record thus shows that the family court did not refuse to let Kim call witnesses. There is no such order in the record. The record also shows that counsel's belated request to call Matthew and/or an expert witness was made after the court had ruled on issues concerning the art collection. Given our rejection of Kim's basic premise, it is unnecessary for us to engage in a statutory construction of section 217 or to consider the adequacy of Kim's witness list.

In any event, as we next discuss, Kim cannot establish prejudice from the exclusion of testimony regarding Matthew's art collection, because the family court did not abuse its discretion in concluding that such evidence was irrelevant.

II. **The family court acted within its discretion not to impute a reasonable rate of return to Matthew's art collection.**

Kim next contends that the trial court erred by excluding the value of Matthew's art collection from its child support calculation. We disagree.

In considering the modification of a child support order, "[o]ur review is limited to determining whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion. [Citation.] We do not substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order. [Citation.]" (*In re Marriage of de Guigne* (2002) 97 Cal.App.4th 1353, 1360.) "[A] determination regarding a request for modification of a child support order will be

affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found from examining the record below." (*In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 555; accord *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282.)

Income is broadly defined for purposes of child support. (§ 4058; *In re Marriage of Cheriton, supra,* 92 Cal.App.4th at pp. 285, 288-289 [proceeds from sale of stock and exercise of options is income]; *In re Marriage of Henry* (2005) 126 Cal.App.4th 111, 118.) Although broad, what constitutes income is not limitless. (*In re Marriage of Pearlstein* (2006) 137 Cal.App.4th 1361, 1372; *In re Marriage of Henry*, at p. 119 [increase in equity of a parent's residence does not constitute income or earning capacity for the purpose of calculating child support].) "Generally, the types of income specified in the statute consist of money that the support obligor actually receives, and do not include unrealized increases in the value of assets." (*In re Marriage of Pearlstein*, at p. 1372; see also *Mejia v. Reed* (2003) 31 Cal.4th 657, 670 ["Support payments usually are paid from present earnings, not liquidation of preexisting assets"].)

A trial court may also consider a child support obligor's earning capacity or wealth and assets to determine income for support purposes. (See generally § 4058, subd. (b) [a court may consider a parent's earning capacity in lieu of income, consistent with the child's best interests]; *In re Marriage of Henry, supra,* 126 Cal.App.4th at pp. 118-119; *In re Marriage of Pearlstein, supra,* 137 Cal.App.4th at p. 1373; *In re Marriage of de Guigne, supra,* 97 Cal.App.4th at pp. 1362-1363; *In re Marriage of Cheriton, supra,* 92 Cal.App.4th at p. 292.) Whether to do so, however, is generally a matter left to the trial court's discretion. Where, for example, the supporting party invests in non-income-producing assets, a court has discretion to impute income to those assets based on an assumed reasonable rate of return. (*In re Marriage of Destein* (2001) 91 Cal.App.4th 1385, 1390, 1393-1397 [rejecting per se rule that a court lacks discretion to impute a rate of return to non-income-producing assets].) And there may be circumstances in which it would be an abuse of discretion for a trial court not to consider a supporting parent's assets, wealth or earning capacity. (See, e.g., *In re Marriage of*

*Dacumos* (1999) 76 Cal.App.4th 150, 155 [court did not err by imputing fair market rental value to properties in calculating income; " '[j]ust as a parent cannot shirk his parental obligations by reducing his earning capacity through unemployment or underemployment, he cannot shirk the obligation to support his child by underutilizing income-producing assets' "]; *In re Marriage of de Guigne,* at p. 1363.)

The record here does not show this is such a case. The family court exercised its discretion *not* to include a valuation of Matthew's entire art collection as income for child support purposes. The court concluded, "This is not a case where somebody is refusing to generate income from fixed assets. This is a case where repeatedly income has been generated that creates a standard of living that is the basis for determining child support[.]"

The record supports that conclusion. Matthew described himself as a "contemporary art enthusiast and collector," not an art dealer. He built his collection over approximately 20 years, and the bulk of it existed before his marriage.[6] At times, he sold art and used it as "an investment vehicle." Matthew generated a consistent level of income from selling art: a net gain of $212,940 in 2010; $344,407 in 2011; $368,825 in 2012;[7] and $311,342 in 2013. He also sold art to pay the spousal support judgment and Leonie's medical expenses. Although the stipulated judgment obligated Matthew and Kim to share the cost of Leonie's therapy after June 2012, Matthew bore alone the cost.

Thus, unlike a case where there is evidence a parent is failing to utilize an income producing asset, there was no evidence Matthew deliberately reduced or withheld revenue from his art collection after separating from Kim to deprive her of child support. Instead, the evidence was that Matthew used his art collection to generate a consistent level of income, which he used, among other things, to support Leonie. There was also no evidence that a significant disparity existed between Matthew's and Kim's lifestyles,

---

[6] The stipulated judgment acknowledged that the art collection was Matthew's separate property.

[7] In 2012, he also had $22,623 in income from his work as a music supervisor.

9

which might warrant consideration of Matthew's art collection.[8] (Cf. *In re Marriage of de Guigne, supra,* 97 Cal.App.4th at pp. 1363-1364.) The family court therefore acted within its discretion in concluding that a reasonable rate of return should not be imputed to Matthew's art collection to calculate child support.

## III. The trial court impliedly found that imputing minimum wage to Kim was in Leonie's best interest.

Kim challenges the imputation of monthly minimum wage income of $1,560 to her. We find no abuse of discretion.

Trial courts have discretion to impute income to a parent based on earning capacity, consistent with the child's best interests. (§ 4058, subd. (b); *In re Marriage of Ficke* (2013) 217 Cal.App.4th 10, 13 [imputation of income to a custodial parent must be supported by substantial evidence that the imputation is in the child's best interests]; *In re Marriage of Cheriton, supra,* 92 Cal.App.4th at p. 301.) "Earning capacity" is the income the spouse is reasonably capable of earning based on the spouse's age, health, education, marketable skills, employment history, and the availability of employment opportunities. (*In re Marriage of Cheriton*, at p. 301.)

The family court here did not make an express finding that imputing minimum wage earnings to Kim was in Leonie's best interest. Nonetheless, that finding was implicit in the court's order. Under the stipulated judgment, Kim had primary physical custody of Leonie, from Sunday mornings to Thursday afternoons. The court reduced Kim's physical custody by giving Matthew and Kim almost 50-50 physical custody, plus giving Matthew sole custody to make decisions about Leonie's therapy. The main reason for this change was Matthew was consistent in ensuring that Leonie's medical and schooling needs were met, including arranging and taking Leonie to her therapy appointments and meeting with her schoolteachers. Kim was not consistent in meeting those needs. Thus, Kim no longer has primary physical custody of Leonie, and Matthew

---

[8] Matthew, for example, lives in an approximately 2,000 square foot house, and Kim lives in a two bedroom apartment.

10

has the burden of ensuring that Leonie's significant therapy needs are met. (Cf. *In re Marriage of Ficke, supra,* 217 Cal.App.4th at p. 16 & fn. 5 [family court improperly imputed monthly income of $13,333 to mother who had 95 percent custody of child].) Leonie also is in school during the day, and Kim has other help in caring for Leonie.[9]

This constitutes sufficient evidence to support the implied finding that it was in Leonie's best interests for Kim to enhance her sources of income through employment.[10]

## IV. The $600,000 payment was not spousal support.

The trial court imputed non-taxable income of $6,944 (the amount of Matthew's monthly payment in lieu of spousal support) to Kim for a two month period. The court thus reduced child support from $1,500 to $1,131 from July 1, 2014 to August 31, 2014, after which child support was increased to $2,033 per month. Kim contends that the $6,944 was spousal support, which could not be used as income for calculating child support. We disagree.

Income, for the purposes of calculating child support, does not include spousal support received from a party to the action. (§ 4058, subd. (a)(1).) Matthew and Kim, in their stipulated judgment, "acknowledge[d] and agree[d] that both waive spousal support from the other, . . ." "In consideration of the spousal support waivers . . . , [Matthew] shall pay to [Kim] the non-taxable sum of $600,000," $350,000 of which was immediately payable and the remaining $250,000 payable in monthly installments of $6,944. Thus, Kim agreed that the $600,000 was not spousal support. The family court therefore properly characterized the $6,944 monthly payment as income for the purposes of child support.

---

[9]    Kim testified at her deposition that she has "assistants" who help with the housework and who "provide me time to work on my photography."

[10]    Although Matthew argues that Kim, who worked as a fashion model and photography agent, had sufficient earning capacity to make minimum wage, Kim's argument on appeal is limited to whether there was a finding that imputing minimum wage to her was in Leonie's best interest. We therefore do not address whether the evidence was sufficient to support Kim's earning capacity.

11

## V.     Attorney fees.

Morrison and Foerster represented Kim pro bono in the family court proceedings. The court denied Kim's request for attorney fees, "as the Court finds that Morrison and Foerster and Phillips Jessner were representing Petitioner *pro bono.*"  We agree that this was not a ground on which to deny attorney fees.

Attorney fees may properly be awarded even where legal services were provided at no personal expense to the client, such as when legal work is performed pro bono publico or by a public interest law firm.  (See *Lolley v. Campbell* (2002) 28 Cal.4th 367, 373 ["it has been generally agreed that a party may 'incur' attorney fees even if the party is not personally obligated to pay such fees.  'A party's entitlement to fees is not affected by the fact that the attorneys for whom fees are being claimed were funded by governmental or charitable sources or agreed to represent the party without charge' "]; *In re Marriage of Ward* (1992) 3 Cal.App.4th 618, 623-626 [attorney fees may be awarded to legal services organizations who represent clients pro bono].)  Morrison and Forester, a private law firm, may be better able to absorb the cost of pro bono services than a nonprofit legal services organization, but the policy of encouraging entities to provide pro bono services is no less applicable to private law firms than it is to nonprofit organizations.

We therefore make the limited finding that Kim could recover her attorney fees, notwithstanding that she was represented pro bono, and reverse the court's order on that ground only.  We do not address whether other grounds might exist to deny attorney fees, and instead leave that for the family court to determine.[11]

---

[11]     At the June 4, 2014 hearing, the family court initially reserved the attorney fees issue "in the event that it does become pertinent and warranted, because I do find that [Kim] does not have sufficient income to retain an attorney."  The court did not "see a sufficient declaration under [*In re Marriage of Keech* (1999) 75 Cal.App.4th 860] with billing statements and other information that would be required for me to award attorney's fees at this time."

**VI.    Motion for sanctions on appeal.**

Matthew asks for sanctions on appeal, based on Kim filing an appellant's appendix containing irrelevant and/or duplicative documents.  (See generally Cal. Rules of Court, rule 8.124(b)(3)(A).)  Although we agree that the appellant's appendix includes numerous irrelevant and duplicative matters and that the inclusion of such documents does not aid Kim's case and hinders appellate review, we deny Matthew's request for sanctions.

## DISPOSITION

The order denying attorney fees is reversed and the matter is remanded for the trial court to consider the issue of attorney fees.  We express no opinion as to whether the court should award attorney fees or in what, if any, amount.  In all other respects, the order is affirmed.  Respondent Matthew Aberle's motion for sanctions is denied. Respondent is awarded costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



ALDRICH, J.


We concur:



EDMON, P. J.



LAVIN, J.


13